ANDREW, J.T.C.
In this state tax proceeding, plaintiff, Joseph Cooperstein challenges a determination by defendant, the Director of the Division of Taxation, that plaintiff, as president of the corporation, Bahr Builder Services, Inc., is personally liable for the corporation’s unpaid sales taxes and gross income withholding taxes. Sales taxes were not paid by the corporation for the period of January 1989 through June 30, 1989, and gross income withholding taxes were not paid by the corporation for the months of February and March 1989.
In regard to the unpaid sales taxes, the Director maintains that plaintiff was an officer of the corporation who was “under a duty to act for [the] corporation in complying with any requirement of the [sales tax] act,” and thus, is personally liable for the corporation’s unpaid sales taxes pursuant to N.J.S.A. 54:32B-2(w) and -14a. With respect to the unpaid gross income withholding taxes, the Director insists that, under the gross income tax act, plaintiff was “under a duty to perform the act in respect of which the violation” of the act occurred, and therefore, is personally liable for the corporation’s unpaid withholding taxes pursuant to N.J.S.A 54A:9-6(f) and -6(1).
The events leading to the Director’s conclusion that plaintiff was personally liable for the corporation’s unpaid taxes began in August 1988. At that time, Robert W. Bahr, Sr., the sole proprietor of a floor-covering business then known as Robert W. Bahr & Sons, met with plaintiff, a licensed real estate broker and consultant, to discuss the commercial feasibility of selling his business. Apparently, Bahr, Sr., had decided that it was time for Mm to retire.
Plaintiff recognized that the business was essentially a family operation that had no real assets to sell to an outside investor. Therefore, plaintiff recommended to Bahr, Sr. that the business be sold to Bahr, Sr.’s family, specifically his son, Robert W. Bahr, Jr., his daughter-in-law, Patricia Miller, and a son-in-law, Alan Mumy. In September 1988, plaintiff confirmed in writing to Bahr, Sr. that *72 he would undertake to effect the proposed transfer of the business for a commission of $20,000.
Plaintiff proceeded to draft a business plan that was to guide the transfer. Plaintiff was paid $5,000 or 25% of his commission for the preparation of the business plan. The balance of his commission or $15,000 was to be paid once he secured corporate financing which would permit the purchase of Bahr, Sr.’s interest by the three children. According to plaintiff, Bahr, Sr.’s family did not have sufficient funds to purchase the business nor sufficient collateral to support financing the purchase. Plaintiff believed that if the business were incorporated, the corporation could secure the monies necessary to fund Bahr, Sr.’s exit from the business. In accordance with plaintiff’s suggestion, on December 27, 1988, Bahr, Sr.’s business was incorporated as Bahr Builder Services, Inc.
Bahr, Sr. and plaintiff, as the named incorporating directors of the new corporation, adopted a corporate resolution in lieu of holding an organizational meeting of directors. The resolution reflects that Bahr, Sr. was named chairman of the board. Plaintiff was designated as the corporate president. Robert W. Bahr, Jr. was named vice-president of operations and secretary. Patricia Miller was designated vice-president of marketing and treasurer, and Alan Mumy became vice-president of installations. The corporation issued a total of 1,000 shares, all to Bahr, Sr., in consideration of Bahr Sr.’s transfer of the business assets, excluding any real estate, to the corporation.
At the time of the incorporation, Bahr, Sr. executed a revocable proxy giving voting control of his 1,000 shares to plaintiff. Legally, as the only other director, plaintiff thus controlled the board of directors.[1] The record reveals, however, that there were no directors’ meetings and that plaintiff never exercised the proxy.
*73 According to plaintiff, he assumed the office of president of the corporation because none of the three children was a natural choice to assume a leadership role. At the hearing plaintiff explained:
in order to avoid bloodshed, at the outset, we would set up a corporation where none of the—all three of them would be on equal status, and the only way to do that was to put somebody above or in between them and that’s the part that I took primarily to give a structure to the company so we can go to a bank to get financing.
The purpose of the business plan, prepared by plaintiff for presentation to various financial sources, was to secure a loan of sufficient size to pay Bahr, Sr. for his interest in the corporation and leave sufficient funds as working capital for the three vice-presidents to continue the business. The plan stated that plaintiff had been selected as president “to provide outside business experience and support,” while the “chairman has taken a non-management role during the transition.” Lastly, the plan noted that the three vice-presidents were to acquire the business during the next three to five years. Plaintiff insists that, although he was the corporate president, his sole function was to arrange for financing so that the three vice-presidents could purchase the business from Bahr, Sr.
The corporate bylaws, however, reveal that plaintiff had authority to manage the business. The bylaws provide that the president:
shall be chief executive officer of the corporation and, subject to the control of the Board of Directors, shall in general supervise and control all of the business and affairs of the corporation....
All cheeks, notes, drafts and other commercial paper of the corporation shall be signed by the President of the corporation or by such other person or persons as the Board of Directors may from time to time designate.
Although plaintiff had the authority to sign checks, the record demonstrates that plaintiff did not sign any corporate checks during the tax period at issue.
*74 Initially, during the tax period of January 1989 to June 30,1989, the three vice-presidents were at the business daily, controlling day-to-day operations. Bahr, Sr., although having relocated to Florida, as far as the record reveals, still maintained control over the business, directing how bills would be paid, when bills would be paid and to whom bills would be paid with the actual check writing being accomplished by Patricia Miller, the treasurer and a vice-president of the corporation. As a matter of fact, the record reveals that, during the tax period in question, Patricia Miller signed nearly all the corporation’s checks in payment of bills and payroll. On occasion Bahr, Jr. signed checks when Miller was not available.
During the tax period at issue, plaintiff alleges he acted solely for the purpose of obtaining bank financing for the corporation, had no involvement in soliciting or obtaining business for the corporation, was not consulted on how bills would be paid or with regard to what commercial contracts the corporation would try to solicit. According to plaintiff, the day-to-day operations were managed by the three vice-presidents who were answerable to Bahr, Sr. Plaintiff described his role in the business as one of meeting with the three vice-presidents once a week for approximately one hour to discuss the organization and operation of a corporate business in preparation for meetings with potential financial backers. Plaintiff did meet with representatives of three financial institutions in an effort to borrow sufficient funds on behalf of the corporation. None of these meetings, however, proved successful.
On March 20, 1989, Bahr, Jr. abruptly resigned as vice-president and left the corporation, apparently because he believed that he could do better financially somewhere else. He acknowledged, however, that he resented plaintiff’s involvement with the business from the very beginning. Bahr, Jr. contradicted plaintiff’s assertions that Bahr, Sr. remained in control of the business after January 1989. Bahr, Jr. believed that his father had no direct involvement in the business after January 1989 because his father had moved to Florida. The record reveals, however, that Bahr, Sr. did return to New Jersey during January 1989, May 1989 and *75 from the end of June 1989 until August 1989, ostensibly to oversee the business.[2] Additionally, Bahr, Sr. telephoned the business during the period of January 1989 through June 30,1989, a fact of which Bahr, Jr. was unaware.
Bahr, Jr. also indicated that management decisions were referred to plaintiff. Specifically, Bahr, Jr. referred to two decisions made by plaintiff with respect to the payment of pay raises and Christmas bonuses at the end of 1988. These management decisions allegedly made by plaintiff, if they took place at all, happened prior to the incorporation of the business on December 27, 1988. It is difficult to understand how plaintiff would have been involved in the business process at that point.
Bahr, Jr. also noted that, since Bahr, Sr. was not available, management questions were referred to plaintiff for decision. The record, however, does not reveal any day-to-day management questions presented to plaintiff, nor does it reveal plaintiffs actual involvement in daily management.
In June 1989, Alan Mumy left the corporation and it was then that plaintiff thought that he and Patricia Miller could effectively run the business. Plaintiff testified that, although he thought the business was a good investment, he did not look at any of the financial records of the corporation at the time.
Although there are some inconsistencies and contradictions in the record, based on a stock purchase agreement in evidence, it appears that on August 10, 1989, plaintiff became the owner of two-thirds of the outstanding stock of the corporation while Patricia Miller became the owner of the remaining one-third interest. *76 Miller was to oversee the day-to-day operations of the business, while plaintiff would take over the financial aspects of the corporation to include the execution and filing of all state and federal tax returns. There is no dispute that all of the corporation’s state tax returns and obligations were filed and paid in a timely manner from September 1989 until the corporation ceased operating in April 1990.
Plaintiff acknowledges that when he assumed control of the corporation’s finances there were unpaid state taxes but that his first awareness of these unpaid sales taxes and gross income withholding taxes was in early 1990 when the corporation received a notice from the Division of Taxation regarding a tax lien for unpaid taxes.
On February 6,1990, plaintiff contacted the Division of Taxation and was informed that he was a “responsible officer” and he would be personally liable for the unpaid state taxes if the corporation failed to make the payment. Although plaintiff insists that he knew nothing of the unpaid state taxes until after he purchased an interest in the corporation, the record reveals that the coiporation’s treasurer, Patricia Miller, knew all along that the taxes had not been paid. She brought this deficiency to the attention of Bahr, Sr., but apparently he put no priority on paying these taxes.
According to the record, the sales tax returns for the first two quarters of 1989 and the gross income tax withholding returns for February and March 1989 were not completed until July 1989 and then submitted to the Division in September 1989 without the tax payment. All of these returns were signed by Patricia Miller, the corporate treasurer.
During the tax period at issue, the record reflects that plaintiff did not own any stock in the corporation, was paid no salary and the only reimbursement he received was for some money he lent the corporation to help meet a payroll. Plaintiff did not participate in the preparation of tax returns, nor did he sign any corporate checks for the payment of any corporate obligations and *77 was not consulted with respect to the payment of corporate bills or taxes.
According to counsel for defendant, plaintiffs two positions as president and director of the corporation compelled the Division to consider plaintiff a “responsible officer” and hold him personally liable for the corporation’s unpaid sales taxes and gross income tax withholding. On March 9,1990, the Division issued a demand for payment in the sum of $30,012.75 consisting of $28,653.33 for sales tax, penalty and interest and $1,359.42 for gross income tax withholdings, penalty and interest. Receiving no response from plaintiff to its March 9, 1990 demand, on April 19, 1990, the Division issued a certificate of debt which was docketed in the judgment records of the Clerk of the Superior Court pursuant to N.J.S.A. 54:49-12.
Plaintiffs complaint in this court followed. Plaintiff does not contest the amount of the taxes owed nor the penalties and interest, only the determination by the Director that he is personally liable for the corporation’s unpaid taxes.
Plaintiff observes that there are no reported decisions in this State construing the relevant language in the personal liability statutes. As a consequence, plaintiff suggests that a review of the New York decisional law would be of assistance because the New York personal liability statutes are similar to those of this State and the New York courts have addressed the present issue in a number of cases. Plaintiff maintains that the New York decisions demonstrate that the imposition of personal liability upon plaintiff for the corporation’s unpaid taxes is clearly unwarranted in this case. Additionally, plaintiff notes that case law from Ohio also reveals that the mere fact that a person is an officer of a corporation is not a sufficient basis to impose personal liability for the unpaid taxes of a corporation.[3]
*78 In response, the Director asserts that the New York decisions cited by plaintiff are of “little interpretive value” in the construction of this State’s personal liability statutes. Moreover, the Director claims that even if New York case law is appropriate, the current New York decisions support the Director’s position in this case. More important, however, relying upon cases in this State dealing with the fiduciary duty of directors of a corporation, the essential thrust of the Director’s position is that the taxes at issue are “trust funds”[4] and that plaintiff, by virtue of being “the president and a director of the corporation was obligated to ensure that the corporation turned over to the State those trust fund taxes.”
The sole issue[5] in this case as framed by the briefs of the parties is whether plaintiff is personally liable for the corporation’s unpaid sales taxes and withheld gross income taxes for the period of January 1989 to June 30, 1989 within the purview of N.J.S.A 54:32B-14 and -2(w) with respect to sales taxes and N.J.S.A 54A:9-6(f) and -6(1) with respect to the withheld gross income taxes.[6] The resolution of this issue turns on the appropriate construction of these personal liability statutes.
*79 I.

Statutory language at issue.

N.J.S.A 54:32B-2(w) defines, in pertinent part, a person who is required to collect sales taxes as
[E]very vendor of tangible personal property or services____ Said terms shall also include any officer or employee of a corporation ... who as suck officer or employee is under a duty to act for such corporation in complying with any requirement of this act and any member of a partnership.
[Emphasis added]
N.J.S.A. 54:32B-14 then imposes personal liability “for the tax imposed, collected or required to be collected” under the sales tax act on “every person required to collect any tax imposed by” the sales tax act.
With respect to the withheld gross income taxes, N.J.S.A, 54A:9-6(f) provides that:
If any employer, without intent to evade or defeat any tax imposed by this act or the payment thereof, shall fail to make a return and pay a tax withheld by him ... such employer shall be liable for such tax....
[Emphasis added]
In turn, N.J.S.A. 54A:9-6(Z) defines an employer to include
[A]n officer or employee of any corporation ... or a member or employee of any partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.
[Emphasis addedj
According to Fedders Financial Corp. v. Taxation Div. Dir., 96 N.J. 376, 476 A.2d 741 (1984), there are two principles of statutory construction which are relevant to any analysis of these taxing statutes. The first is that a court must follow the clear import of the statutory language. Second, if the interpretation of the provision is doubtful and legislative history does not assist in removing the doubt, the statutory provision should be construed in favor of the taxpayer. Id. at 384-86, 476 A.2d 741. With these principles in mind, I turn to the statutory language at issue.
The language employed in both personal liability provisions imposes personal liability only upon those officers of a corporation who are either “under a duty to act for such corporation in complying with any requirement of the [sales tax] act,” N.J.S.A 54:32B-2(w), or are “under a duty to perform the act in respect of *80 which the violation occurs,” N.J.S.A 54A:9-6(l). It is clear that, in both cases, the Legislature did not intend to hold all officers personally liable for unpaid corporate taxes but only those who were under a duty to act for the corporation with respect to the payment of the taxes.
Plaintiff argues that he had neither the duty nor the responsibility to see that the corporation’s taxes were paid and that the record supports his assertion. On the other hand, the Director maintains that plaintiff had the duty to act on behalf of the corporation because he, in accordance with the by-laws of the corporation, had the ultimate authority to compel the payment of the taxes at issue but failed to do so. The Director contends that plaintiffs authority as corporate president, even if unexercised, is sufficient to lead to the conclusion that plaintiff had a duty to ensure that the taxes at issue were paid. Consequently, the question then becomes whether the ultimate “authority” to control corporate tax payments is equivalent, under N.J.S.A 54:32B-2(w) and N.J.S.A 54A:9-6(l), to having a “duty” to make the payments.
In the recent ease of In re Premo, 116 B.R. 515 (Bankr. E.D.Mich.1990), the bankruptcy court had the occasion to consider this question with respect to the personal liability provision in the Internal Revenue Code at 26 U.S.C.A § 6672. That provision permits the imposition of personal liability upon corporate officers who are “under a duty to perform the act in respect of which the violation occurs,” 26 U.S.C.A § 6671(b), language which is identical to N.J.S.A 54A:9-6(() of our gross income tax act and very similar to that of N.J.S.A 54:32B-2(w) in our sales tax act.
The bankruptcy court observed:
As previously noted, § 6671 speaks of a “duty” to perform the act in question. The term “duty” is defined as “obligatory tasks, conduct, service, or functions that arise from one’s position.” Webster’s Ninth New Collegiate Dictionary (1985)____ Use of the adjective “obligatory” in this definition is consistent with the reference in § 6672(a) to the person “required” to collect and pay the withholding taxes. The word “authority,” on the other hand, is defined as the “power to influence or command thought, opinion, or behavior.” Id. *81 These definitions suggest that the terms “duty” and “authority” are not synonymous. The notion of a duty implies an affirmative obligation to perform specific acts, whereas “authority” is by its nature discretionary. A high-level corporate officer, for example, may have the authority to “command” that any number of actions be taken, but that does not mean that he or she is obliged or required to do so. To equate authority (or power or the right to exercise control) with duty, as the IRS would have us do, would expand the scope of §§ 6671 and 6672 in a manner which appears unwarranted by the language of these provisions.
[ 116 B.R. at 525]
Based on its analysis of the statutory language, the court concluded that the federal personal liability provision is directed at a person charged with the “duty” of collecting and paying the taxes for the corporation, that is, one who had a corporate “obligation” to direct tax payments to the appropriate authority and not one who may have had the “authority” to do so. Id. at 530. Authority, alone, according to the court, is simply not enough. Instead, the personal liability provision was designed to impose liability upon those officers or employees actually responsible for a corporation’s failure to collect and pay over required taxes.
Undoubtedly, the appropriate point at which to begin the present inquiry is an analysis of the statutory language in the personal liability provisions at issue. Neither party in this case has attempted such a critical analysis. That analysis, however, has been persuasively provided by the court in In re Premo and I conclude that that court’s approach and conclusion applies equally well to the language employed in both N.J.S.A. 54:32B-2(w) and N.J.S.A. 54A:9-6(Z). The language of these provisions supports the view that unexercised authority, without more, is insufficient to impose personal liability upon a corporate officer. The statutory language implicitly requires a fact-sensitive pragmatic inquiry into the corporate activities of an officer or employee before personal liability can be imposed.
This conclusion is further supported by comparing the personal liability language in the sales tax act of a member of a partnership with that of an officer or employee of a corporation. Any member of a partnership regardless of whether such member has a duty to act for the partnership can be held personally liable *82 for unpaid taxes of the partnership. The limiting statutory language, pertaining to the requirement that an officer be under a duty to act for the corporation, evidences the Legislature’s intent to limit the personal liability of corporate officers for unpaid sales taxes to those officers who play an active role in the corporation’s affairs and management.
II.

Decisions interpreting statutory language.

Plaintiff contends that his view of the personal liability provisions is supported by decisions of the courts of the State of New York. As previously mentioned, the Director asserts that the New York decisions are of little assistance in the interpretation of this State’s personal liability provisions. The Director notes that even if this State “adopted the language of New York’s statute,” see New Jersey Bell Tel. Co. v. Taxation Div. Director, 152 N.J.Super. 442, 450, 378 A.2d 38 (App.Div.1977), certif. denied, 75 N.J. 594, 384 A.2d 824 (1978), that would not be an adoption of the interpretive decisions of the New York courts rendered after this State adopted New York’s statute. The Director then observes that the New Jersey Sales and Use Tax Act was enacted in 1966 and that all of the New York cases cited by plaintiff were decided in 1978 and thereafter.
To begin with, the fact that the New York cases interpreting its sales tax personal liability provisions were decided after this State enacted the sales tax act does not detract from the persuasive effect of well-reasoned sister-state decisions interpret ing identical or nearly identical statutory language. The Director misconstrues the difference between presumptive legislative history and persuasive judicial decisions. See 2B Norman J. Singer, Sutherland Statutory Construction § 52.02 (5th ed. 1992). With respect to legislative history, there is a presumption that when one state adopts a statute from a sister state the adopting state also adopts the prior interpretations of the statute by the courts of the sister state. Todd Shipyards Corp. v. Weehawken Tp., 45 N.J. *83 336, 343, 212 A.2d 364 (1965). The reason for the presumption is clear. When our Legislature draws upon a statute of another state, it probably intended to accept the interpretive gloss that statute then had in the other state. Ibid.
The Director notes that this presumption cannot apply in this case because the New York decisions postdate our Legislature’s adoption of the New York sales tax act. Although the presumption may not apply, that, however, does not mean that the decisions from other states interpreting identical or similar statutory language may not be a valuable source of interpretive guidance. See Singer, supra, § 50.03 at 220-23; Neptune T.V. & Appl. Serv. Co. v. Litton Microwave, Etc., 190 N.J.Super. 153, 161, 462 A.2d 595 (App.Div.1983) (when there are no reported cases in this State construing a statutory phrase, a court can look to other jurisdictions having similar statutes employing similar language). See also Van Horn v. William Blanchard Co., 88 N.J. 91, 103-04, 438 A.2d 552 (1981) (Handler, J., dissenting).
The Director, however, also contends that the more recent New York decisions support her contention that the ultimate authority of a corporate officer to compel the payment of the taxes at issue, albeit unexercised, is sufficient to impose personal liability on plaintiff.
Plaintiff claims that the opinions in Chevlowe v. Koerner, 95 Misc.2d 388, 407 N.Y.S.2d 427 (1978) and Vogel v. New York State Dept. of Taxation, 98 Misc.2d 222, 413 N.Y.S.2d 862 (1979) support his position, while the Director asserts that two later New York decisions in Blodnick v. New York State Tax Comm’n, 124 A.D.2D 437, 507 N.Y.S.2d 536 (1986) and Cohen v. State Tax Comm’n of State of N.Y., 128 A.D.2d 1022, 513 N.Y.S.2d 564 (1987) support her position.
In Chevlowe v. Koerner, the New York State Tax Commission sought to impose personal liability upon plaintiff for the unpaid sales tax obligation of a corporation pursuant to a provision of the New York sales tax law which is virtually identical to the provision *84 in N.J.S.A. 54:32B-2(w). The New York law permitted the imposition of personal liability upon:
[A]ny officer or employee of a corporation ... who as such officer or employee is under a duty to act for such corporation in complying with any requirement of this article.
[N.Y.Tax Law § 1131(1) (McKinney 1993) ]
Plaintiff was the president of 10 Kew Gardens, Ine., until the early part of 1969 when there was a merger with another corporation which became the parent corporation and 10 Kew Gardens, Inc. became a subsidiary. Chevlowe, supra, 407 N.Y.S.2d at 428. Prior to the merger, plaintiff had complete control of the subsidiary including the responsibility for filing sales tax returns. Ibid. After the merger, plaintiff became a vice-president of the parent corporation and did not participate in the day-to-day management of the subsidiary nor did he sign checks on behalf of the subsidiary although he remained a signatory on the checking account. Ibid. The sales tax returns for the periods after the merger were neither prepared nor signed by plaintiff.
Since there were no New York decisions at that time construing the personal liability provision of the New York sales tax law, the court resorted to federal case law interpreting the provisions of § 6671 of the Internal Revenue Code because the language in § 6671 was similar to that of § 1131 of the New York sales tax law. Id. at 429.
In its approach to the problem, the New York court utilized the criteria set down by the federal district court in Datlof v. United States, 252 F.Supp. 11, 32-33 (E.D.Pa.1966), aff'd, 370 F.2d 655 (3rd Cir.1966), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967). Datlof identified the following factors for consideration.
1. Contents of the corporate by-laws.
2. The ability of the individual in question to sign checks on the company’s bank account.
3. The identity of the individual who signed the tax returns of the firm.
4. The payment of creditors instead of the taxing entity.
5. The identity of the officers, directors and principal stockholders in the firm.
6. The identity of the individuals who hired and discharged employees.
*85 7. In general, the identity of the individual who was in control of the financial affairs of the firm in question.
Chevlowe, supra, 407 N.Y.S.2d at 429.
Applying these criteria, the court concluded that plaintiff was not personally liable for the corporation’s unpaid sales taxes. The court observed that plaintiff did not sign the tax returns after the merger, did not have the right to hire and fire employees, and was not the individual who was in control of the financial affairs of the corporation in question. Id. at 430. Acknowledging that plaintiff was a vice-president, the court noted that “the holding of corporate office does not, per se, impose liability upon the office holder.” Ibid. Instead, the court asserted that the focus should be on the person who has or shares significant, but not necessarily exclusive, control as to what bills or creditors should be paid.[7] Ibid.
Vogel v. New York State Dept of Taxation, the second New York case relied upon by plaintiff, involved the question of whether personal liability for a corporation’s unpaid sales taxes could be imposed on a corporate secretary who held 50% of the stock of the corporation, but who was not actively involved in the operation and management of the corporation. Vogel supra, 413 N.Y.S.2d at 863.
The court, first, observed that the resolution of the question of whether an officer is under duty to act for the corporation involves a factual analysis guided by the criteria set forth in Chevlowe v. Koerner, supra. Id. at 864. Additionally, however, the court noted that in closely-held corporations, an officer’s knowledge of the corporate affairs and the benefits the officer received from corporate profits would be extremely important considerations. Id. at 865.
Although the court acknowledged that a corporate secretary is generally considered a managing agent and a fiduciary of a *86 corporation, it noted that such an officer is not an insurer for the corporation. Ibid. The court concluded that the intent of the sales tax provision was to limit personal liability to those corporate officers who actively participate in the management and affairs of the corporation. Ibid.
In contrast, the Director places heavy reliance upon the cases of Blodnick v. New York State Tax Comm’n, supra, and Cohen v. State Tax Comm’n of State of N.Y., supra, to support the determination she has made in this case. Interestingly enough, neither of these decisions permits the imposition of personal liability upon a corporate officer solely on the basis of holding corporate office.
Blodnick begins its analysis with the statement that “the holding of corporate office does not per se impose [tax] liability upon the officeholder,” citing as support Chevlowe v. Koerner, supra and Vogel v. New York State Dept. of Taxation, supra, the cases relied upon by plaintiff. 507 N.Y.S.2d at 537. The court then described some of the factors that must be considered, in addition to corporate office, in determining whether a person has a duty to act for a corporation. These included “responsibility for management or maintenance of the corporate books” and “derivation of substantial income from the corporation or stock ownership.” Id. at 538.
The court noted that the petitioners were the corporation’s only officers and shareholders, were otherwise unemployed outside their homes and completely ignored their corporation. In its balancing of the various factors, the court concluded:
Given petitioners’ positions as the sole officers and shareholders of the corporation, together with the fact that they were unable to relate who, if not they, was responsible for collection of taxes, respondent’s finding that petitioners were the correct parties for assessment of taxes was neither arbitrary nor capricious. The fact that petitioners did not in fact exercise their responsibilities is irrelevant.[8]

[Ibid,]

*87 The New York court’s statement that corporate office does not necessarily permit the imposition of personal liability reflects that authority alone is not enough. The court did not discuss the extent to which the petitioners were actually responsible for the management of the corporate books or the amount of income they derived from the corporation. The petitioners, however, were the sole stockholders and made no attempt to show who had the actual duty to collect taxes for the corporation. Clearly, the court relied upon these factors, in addition to the holding of corporate office, in concluding that petitioners could be held personally liable for the corporation’s unpaid taxes.
Cohen v. State Tax Comm’n of State of N.Y., supra, involved the question of whether one, holding the dual offices of vice president and secretary of the corporation, but who was not involved in the corporation’s day-to-day operations, could be held personally liable for the corporation’s unpaid sales taxes. 513 N.Y.S.2d at 565. The court broached its analysis by stating that the determination of whether a corporate officer has a duty to act for a corporation in complying with the sales tax act is a “factual” question. Ibid. The relevant factors in making such a factual determination, as set forth by the court, were:
[T]he authority to hire and fire employees, status as an officer, director or stockholder, authority to sign checks and prepare returns, responsibility for management and derivation of substantial income from the corporation.

[Ibid.]

Applying these criteria, the court concluded that the petitioner could be held personally liable for the unpaid taxes of the corporation. This conclusion, however, was not based solely on the petitioner’s status as an officer. The court, in sustaining the decision of the New York State Tax Commission found that, not only was the petitioner an officer of the corporation, but was also a stockholder who negotiated loans on behalf of the corporation, was routinely consulted about the corporation’s operation, participated in the hiring of at least one employee, was responsible for arranging for payment of certain federal taxes and played an active roll *88 in the corporation’s overall management.[9] Id. at 566.
From all of these New York cases, several principles can be gleaned. First, the holding of corporate office does not, in and of itself, permit the imposition of personal liability upon the office holder for unpaid taxes of a corporation. Second, the determination of whether a duty to act on behalf of the corporation exists depends upon the balancing of a number of factors. These factors include, but are not limited to:
1. The contents of the corporate by-laws.
2. One’s status as an officer and/or stockholder.
3. Authority to sign checks and actual exercise of this authority.
4. Authority to hire and fire employees and actual exercise of this authority.
5. Responsibility to prepare and/or sign tax returns.
6. Day-to-day involvement in business or responsibility for management.
7. Power to control payment of corporate creditors and taxes.
8. Knowledge of the failure to remit taxes when due
9. Derivation of substantial income or benefits from the corporation.
The federal cases interpreting the personal liability provisions at 26 U.S.C.A. § 6671 appear to be consistent with the New York *89 cases in the imposition of personal liability on corporate officers.[10] Although liability is based on a balancing of the factors previously mentioned, there appears, however, to be an emphasis placed on the degree of influence and control which an officer exercised in the affairs of the corporation. Specifically, the federal courts focus on the nature and extent of the active participation of the corporate officer in: (1) the financial affairs of the corporation, (2) the decisions concerning the priority of payment to creditors, and (3) the derivation of some personal benefit from the corporation’s failure to pay taxes. See In re Premo, supra, 116 B.R. at 525-30 for a comprehensive review and analysis of the federal decisions. The personal liability concept, as revealed by the federal decisions, is not to penalize a corporate officer solely because he or she is an officer, but to reach the party or parties actually responsible for the corporation’s failure to pay the tax.
An application of the enumerated criteria to the facts of the present case can only lead to the conclusion that plaintiff is not personally liable for the unpaid taxes of the corporation. To begin with, while the corporate by-laws designated plaintiff as the chief executive officer with the authority to control the affairs of the corporation, the record reveals that he did not exercise that authority during the tax period at issue in this case. While plaintiff had the authority to sign checks on behalf of the corporation, the record demonstrates that he did not sign any corporate checks during the tax period at issue.
Moreover, plaintiff had no involvement in the day-to-day operations or in the overall management of the corporation’s affairs. He was not consulted as to the payment of corporate debts or with *90 regard to the corporation’s business in general. During the tax period at issue, plaintiff was not a stockholder and did not receive any income, salary or commissions from the corporation. The only reimbursement plaintiff received was for money that he had lent to the corporation to meet a payroll. Plaintiff did not participate in the preparation of either state or federal tax returns nor was he expected to. The record also reveals that plaintiff had no knowledge of the corporation’s failure to remit taxes during the relevant period.
Although plaintiff had a proxy giving him voting control of all of the shares of the corporation, plaintiff never exercised the proxy.
Plaintiff’s initial involvement in the corporation was for the sole purpose of earning a brokerage commission, the major portion of which was payable upon a transfer of the business from Bahr, Sr. to Bahr, Sr.’s son, son-in-law and daughter-in-law. His participation in the corporation was designed to accomplish this purpose and not to exert control over the corporation’s affairs, financial or otherwise. The only loan that plaintiff attempted to arrange on behalf of the corporation was in furtherance of the plan to effect a transfer of the business so that he could obtain the balance of his brokerage commission.
Clearly, during the tax period at issue, plaintiff did not exercise control over, nor participate in, the financial affairs of the corporation or the disbursement of corporate funds or the priority of payments to creditors. Plaintiff simply did not have a duty to act for the corporation with respect to the payment of the taxes at issue.
III.

Personal liability of a corporate director.

The Director, in an attempt to convince this court that unexercised corporate authority, alone, is sufficient to impose personal liability upon a corporate officer, devoted a significant portion of her post-trial brief to an analysis of a decision of our Supreme *91 Court in Francis v. United Jersey Bank, 87 N.J. 15, 432 A.2d 814 (1981). Francis involved the issue of whether a corporate director could be held personally liable in negligence for failing to prevent the misappropriation of trust funds by other directors who were also officers and shareholders of the corporation. Id. at 20, 432 A.2d 814. The Court found that the implicated corporate director was not active in the corporate business, knew virtually nothing of its affairs, and never made the slightest effort to discharge any of her responsibilities as a corporate director. Id. at 26-27, 432 A.2d 814.
Relying upon early judicial decisions involving personal liability of corporate directors and the responsibility imposed upon corporate directors by the New Jersey Business Corporation Act, specifically N.J.S.A 14A:6-14,[11] the Court concluded, on a theory of negligence, that the corporate director had a duty to the corporation’s clients to exercise ordinary care, that she breached that duty, and that her breach was the proximate cause of their losses. Thus, the corporate director could be held personally responsible for the losses.
The Director maintains that plaintiff, in this case, as a corporate director had a duty, as explained in Francis, supra, to become informed about the affairs of Bahr Builder Services, Inc., and plaintiffs failure to make sure that the taxes at issue were remitted constituted a breach of his duty as a corporate director. It is the Director’s position that the duty imposed upon a corporate director by the corporate law is the equivalent of “a duty to act for [the] corporation in complying with any requirement of the [sales tax] act,” N.J.S.A 54:32B-2(w), and “a duty to perform the act in respect of which the violation” of the act occurred under the gross income tax act, N.J.S.A. 54A:9-6(Z). Specifically, the Director contends that a duty was imposed upon plaintiff by his position as a corporate director and draws the inference that this *92 is the same duty set forth in the Sales and Use Tax Act and the New Jersey Gross Income Tax Act.[12]
The Director’s argument is wide of the mark. To begin with, corporate directors are not named in either personal liability statute. The Director argues that the language employed in the personal liability provisions sets forth only examples of who can be held personally liable, and thus, does not exclude directors and shareholders of a corporation. There is nothing in the statutory language, however, that indicates, in any way, that the named parties were only offered as examples. Moreover, if there is any doubt on this point, it must be resolved in favor of plaintiff. See Fedders Financial Corp. v. Taxation Div. Dir., supra, 96 N.J. at 384-86, 476 A.2d 741.
Additionally, as has been previously mentioned, the New Jersey Sales and Use Tax Act was drawn from the corresponding New York Sales and Compensating Use Tax Law, L. 1965, c. 93, N.Y.Tax Law §§ 1131 et seq. (McKinney 1993); New Jersey Bell Tel. Co. v. Taxation Div. Director, supra, 152 N.J.Super. at 450, 378 A.2d 38. At the time of the enactment of the New Jersey sales tax act in 1966, the New York personal liability provision did not include corporate directors. See L. 1965, c. 93. New York, however, amended its personal liability provision in 1985 to include corporate directors. See L. 1985, c. 765, § 13, N.Y. Tax Law § 1131(1) (McKinney 1993). This State has not amended its personal liability provision to make the same inclusion. The New Jersey Legislature simply did not intend to include corporate directors or shareholders in the personal liability provision or they would have specifically included them.
What is even more important, however, is that the Director attempts, without an appropriate basis, to read the personal *93 liability provisions of the sales tax act and the gross income tax act in pari materia with the New Jersey Business Corporation Act, specifically NJ.S.A. 14A:6-14.
“Statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of persons or things or have the same purpose or objective.” Singer, supra, § 51.03 at 138.
The design of the business corporation act was “to simplify, clarify and modernize, the laws of corporations.” See N.J.SA 14A:l-l(3)(a) The evident purpose of the sales tax act was to impose a tax upon retail sales of tangible personal property and certain services. N.J.SA 54:32B-3. The purpose of the gross income tax act was to impose a tax on the gross income of individuals, estates and trusts. N.J.SA 54A:2~1.
Inasmuch as the New Jersey Business Corporation Act, on one hand, and the Sales and Use Tax Act and the New Jersey Gross Income Tax Act, on the other hand, deal with different subjects, separate areas of the law and have different purposes, there is no basis for treating the business corporation act in pari materia with either the sales tax act or the gross income tax act.
This conclusion finds support in International Flavors & Fragrances, Inc. v. Taxation Div. Director, 5 N.J. Tax 617 (Tax 1983), aff'd, 7 N.J.Tax 652 (App.Div.1984), aff'd, 102 N.J. 210, 219 n. 5, 507 A.2d 700 (1986). In that case, the Director asked the Tax Court to determine legislative intent by comparing the definition of “subsidiary” in the business corporation act with its use in the corporation business tax act. 5 N.J.Tax at 626. This court concluded that the two enactments could not be read in pari materia. Ibid. Our Supreme Court affirmed this decision and added: “We agree with the Tax Court that the Business Corporation Act’s language cannot sensibly be used to give meaning to the language of the Corporation Tax Act.” 102 N.J. at 219 n. 5, 507 A.2d 700. See also Newark Bldg. Assocs. v. Director, Div. of Taxation, 128 N.J.Super. 535, 539-40, 320 A.2d 867 (App.Div.1974) (Unincorporated Business Tax Act, N.J.S.A 54:11B-1 et seq. and *94 the Partnership Act, N.J.S.A. 42:1-1 et seq. are not in pari materia, nor are they statutes on cognate subjects).
The Director has offered nothing which indicates that when the Legislature enacted the personal liability provisions of either the sales tax act or the gross income tax act that it had the business corporation act in mind or was influenced by that act in its adoption of the personal liability provisions at issue. By the same token, there is nothing to indicate that when the Legislature enacted the personal liability provisions that it had corporate law in mind or that it was influenced by the law concerning corporations.
In light of the foregoing, the Director’s assessment of personal liability cannot be sustained. The Clerk of the Tax Court is directed to enter judgment vacating the assessment at issue in this case.

 There is some confusion on this point. Plaintiff alleges that, for incorporation purposes, there were only two directors, Bahr, Sr. and plaintiff and immediately thereafter there were five, Bahr, Sr., plaintiff, Bahr, Jr., Patricia Miller and Alan Mumy. There is nothing in the record, however, to support plaintiff’s assertion.

 It must be noted that, during the hearing, plaintiff's counsel offered as evidence a copy of a letter written by Patricia Miller to the Internal Revenue Service dated January 1990. I sustained defendant's objection to this offer on the basis that the letter was incompetent hearsay. What I did not realize at the time was that the parties had agreed to the use of this letter as an exhibit at the pretrial conference which was memorialized in the pretrial order, and therefore, it should not have been excluded.

 The relevant Ohio case law, however, is not persuasive because the language employed in Ohio's personal liability provisions is substantially different from the New Jersey personal liability provisions. See Ohio Rev.Code Ann. §§ 5739.-33, 5747.07(F) (Anderson 1992). Therefore, the case law from Ohio will not be considered in this opinion.

 The taxes at issue are collected for the State and are frequently referred to as "trust fund” taxes. See N.J.S.A. 54:32B-12(a) and N.J.S.A. 54A:7-4.

 At the pretrial conference, the Director raised the issue of whether plaintiff was personally liable for the taxes at issue on the theory that plaintiff was a bulk sale purchaser of the corporation’s business assets and had failed to notify the Director of the bulk sale in accordance with N.J.S.A. 54:32B-22(c). Although the issue was preserved in the pretrial order, the Director has not attempted, in any way, to demonstrate that plaintiff’s purchase of stock in the corporation constituted a bulk sale within the meaning of N.J.S.A. 54:32B-22(c). I have concluded that the Director abandoned this issue and will not address it in this opinion.

 The Director has conceded that under the facts of this case plaintiff cannot be considered to have willfully failed to collect and pay over the withheld gross income taxes and therefore personal liability under N.J.S.A. 54A:9-6(g) (willful failure to collect and payover tax) is not an issue in this case. The Director's concession appears to be based on the fact that the record reveals that plaintiff did not have knowledge of the unpaid taxes until after the tax period at issue.

 Other New York courts have adopted or modified the criteria delineated in Chevlowe. In Malkin v. Tully, 65 A.D.2d 228, 412 N.Y.S.2d 186 (1978), the court added the factor of "whether the petitioner ... derived a substantial part of his income from the corporation." Id. 412 N.Y.S.2d at 188.

 Contrary to the Director's position in this case, the court, in Blodnick, found that the petitioners failed to exercise their responsibilities not their authority. As defined in The American Heritage Dictionary (2d Coll. ed. 1982) responsibility is a "duty” or obligation” for which one is "answerable." Id. at 1053.

 The Director also cited Martin v. Commissioner of Taxation & Finance, 162 A.D.2d 890, 558 N.Y.S.2d 239 (1990). Martin also involved a factual analysis in which the court concluded that the petitioner, the sole corporate officer and only shareholder of the corporation, had a significant involvement with the corporation’s affairs, and thus, could be held personally liable for the corporation’s unpaid sales taxes. Id. 558 N.Y.S.2d at 240.
There are also a number of New York decisions concerning employee withholding taxes which disclose that the New York courts engage in the same factual analysis employing the same factors as in their sales tax cases. See Rosenblatt v. New York State Tax Comm’n, 114 A.D.2d 127, 498 N.Y.S.2d 529, rev’d on dissent, 68 N.Y.2d 775, 506 N.Y.S.2d 675, 498 N.E.2d 148 (1986); Capoccia v. New York State Tax Comm'n, 105 A.D.2d 528, 481 N.Y.S.2d 476 (1984); Ragonesi v. New York State Tax Comm’n, 88 A.D.2d 707, 451 N.Y.S.2d 301 (1982); Malkin v. Tully, 65 A.D.2d 228, 412 N.Y.S.2d 186 (1978). There is, however, one sales tax decision, Massa v. New York State Tax Comm’n, 102 A.D.2d 968, 477 N.Y.S.2d 838 (1984), which seems to indicate that corporate office alone is a sufficient basis upon which to impose personal liability. Id. 477 N.Y.S.2d at 839. The court's statement to that effect, however, was clearly obiter *89 dictum and the authorities cited by the court to support the statement do not, in fact, support it.

 See, e.g., Hochstein v. United States, 900 F.2d 543, 546 (2d Cir.1990); Bonnabel v. United States, 744 F.Supp. 85 (D.N.J.1990); In re Premo, supra. As previously noted, 26 U.S.C.A. §§ 6671, 6672 permit the imposition of personal liability upon an officer or employee of a corporation who is “under a duty to perform the act in respect of which the violation occurs,” language which is identical to that found in N.J.S.A. 54A:9-6(/) of the New Jersey Gross Income Tax Act.

 N.J.S.A. 14A:6-14 makes it incumbent upon corporate directors to "discharge their duties in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

 The Director did not attempt to establish plaintiff’s personal liability on the negligence theory advanced in Francis. Even if I were to entertain such a claim, the factors which supported personal liability in Francis are not present in the record of this case.