DREIER, J.A.D.
The Division of Taxation appeals from a decision of Judge Andrew, reported at 13 N.J.Tax 68 (Tax 1993), which absolved plaintiff from personal responsibility for unpaid sales taxes and gross income withholding taxes for the period January 1989 to June 30, 1989.
The detailed findings of fact by Judge Andrew need not be reiterated by us. We merely note that during the applicable period, the business was run by its founder, Robert W. Bahr, Sr., from Florida through the Vice Presidents of the corporation, his children, daughter-in-law and son-in-law, who exercised the actual management authority. Plaintiff, unrelated to the family, although nominally the president, had been placed in this position by Bahr, Sr. to secure financing for an expected buy-out by the children and to resolve differences among them. While plaintiff might call the business to determine how it was progressing, during the relevant period he did not manage the day-to-day affairs of the business or supervise the payment of bills, including taxes.
*180 Judge Andrew noted that under the corporate bylaws plaintiff was the chief executive officer of the corporation and had the authority to supervise and control the business and affairs of the corporation. Specifically, he had the authority to sign cheeks, although he did not do so.
The statutes in question, N.J.S.A 54:32B-2(w) and -14(a) (concerning sales taxes), and N.J.S.A 54A:9 — 6(f) and -6(g) (concerning withholding taxes), define the person or employer required to collect and remit sales taxes and gross income taxes as the officer or employee who “is under a duty” to act or perform for the corporation. The issue here therefore is whether plaintiff was under such a duty, as opposed to merely being authorized to sign and remit the checks. The founder’s daughter-in-law, Patricia Miller, had been designated as vice president and treasurer and managed marketing. The founder’s son, Robert Bahr, Jr., was vice president of operations and secretary of the corporation. They managed the day-to-day affairs of the office, allegedly as directed by their father from Florida. In fact, during the period in question they remitted to him approximately $81,000 in corporate distributions. It was only after the period in issue here, when plaintiff bought stock in the corporation and took over active management with Miller, that he discovered that the taxes had not been paid, and from that point on there were no deficiencies.
Judge Andrew determined that he would reject the theory that an officer or director is responsible for all actions in areas where the officer or director has the mere authority to act. He properly drew the distinction between the authority to act and the duty to act, the latter of which is the focus of the two statutes. In the case of this corporation, plaintiff may have had the authority to review the taxes and sign the checks, but the duty to do so had been delegated to other employees who defaulted on their obligations.
The State contends that the trial judge relied upon scant authority, when there is substantial authority in the federal and State courts holding that the corporate officers in the chain of command above the person who has the actual duty to pay the *181 taxes are also responsible. Plaintiff and the trial judge properly distinguished these cases based upon the actual involvement of the superior officers in the process of paying the taxes.
The trial judge also identified nine factors which should be analyzed in determining whether the officer should be held responsible. 13 N.J.Tax at 88. The court’s list departs somewhat from that of the Fifth Circuit in Barnett v. I.R.S., 988 F.2d 1449, 1455 (5th Cir.), cert. denied, — U.S. -, 114 S.Ct. 546, 126 L.Ed.2d 448 (1993), and that in Datlof v. United States, 252 F.Supp. 11, 32-33 (E.Dist.Pa.), aff'd, 370 F.2d 655 (3rd Cir.1966), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967) (generally followed by the New York courts). But all of these tests balance a number of similar factors, such as the management of the financial affairs of the debtor, the ability to sign checks, the signing of tax returns, the hiring and firing of employees, etc.; all include the concept of a duty to act.
The duty to act, of course, could be imposed by the corporate charter or bylaws, but is different from a mere authorization to act. As this distinction is reflected in well-reasoned eases elsewhere in the country, we agree with Judge Andrew that the factors posed by him must in this case be analyzed in terms of an authorization to act coupled with the “actual exercise of this authority.” 13 N.J.Tax at 88. We do not rule out the possibility of liability where, under different facts, an officer has the mere authority to act but no one else in the organization has the specific duty to act. But those were not the facts in this case, and here the judge properly analyzed the relevant factors in reaching his conclusion. He stated that plaintiff had no involvement in the day-to-day operations or overall management of the corporate affairs; he was not consulted concerning the payment of debts or the corporation’s business in general; he was not a stockholder; he received no income, salary or commissions from the corporation; he did not participate nor was he expected to participate in the preparation of the State or federal tax returns; and he had no knowledge of the failure to remit taxes during the period.
*182 With regard to plaintiffs liability as a director, we also agree with Judge Andrew that this case is not governed by Francis v. United Jersey Bank, 87 N.J. 15, 432 A.2d 814 (1981), decided on a negligence theory. The general duty imposed by Francis to review the corporate affairs is not the same as the statutory duty to pay taxes, the breach' of which creates personal liability.
The decision of the Tax Court is affirmed substantially for the reasons expressed by Judge Andrew in his comprehensive opinion of March 19, 1993.