SMALL, J.T.C.
The issue for determination in this case is whether three individuals who were officers, directors, and shareholders of a corporation are personally liable for that corporation’s unpaid New Jersey Sales and Use Tax. N.J.S.A 54:32B-1 to 29.
Plaintiffs appeal from a determination of the Director that they are each personally liable for sales tax of GBF Factory Outlet, Inc., for the period 1984 through 1988, in the amount of $57,836 plus penalty and interest. By agreement of the parties, the only issue before the court at this point is the existence of personal liability of each of the three plaintiffs. Only if personal liability is found will the court address the issue of the amount of such liability.
The statutory language imposing personal liability for corporate sales tax liability, N.J.S.A 54:32B-2(w) and -14, provides a standard for that determination. The first of these sections defines a person required to collect sales taxes as
[E]very vendor of tangible personal property or services includ[ing] any officer or employee of a corporation or of a dissolved corporation who as such officer or employee is under a duty to act for such corporation in complying with any requirement of this act....
[N.J.S.A 54:32B-2(w).]
The second section relevant to the present inquiry provides that:
Every person required to collect any tax imposed by this Act shall be personally liable for the tax imposed, collected, or required to be collected under this act.
[N.J.S.A. 54:32B-14(a)J
Unfortunately, the Director has never promulgated detailed regulations defining personal liability pursuant to N.J.S.A 54:32B-24(1). This court addressed the issue of personal liability for the first time in a reported decision in Cooperstein v. Division of Taxation, 13 N.J.Tax 68, 71 (Tax 1993), aff'd June 20, 1994, 14 N.J.Tax 192.
The determination of the issue of personal liability is,' by its nature, extremely fact-sensitive. Accordingly, the court’s discussion of the legal issues must follow a careful description of its *93 factual findings. Particular attention should be paid to these facts, as this court’s ultimate conclusion is that two of the plaintiffs in this case are personally hable for the sales tax and the third plaintiff is not.
Plaintiffs, Harry Skaperdas, George Skaperdas and Barry Birk-enholtz, were involved as business associates in several ventures in the fur industry. In late 1983 and early 1984, they established a corporation known as GBF Factory Outlet, Inc. (“GBF”), a sub-chapter S corporation for federal income tax purposes.
The principal activity of GBF was the operation of a retail store selling fur coats in Seeaucus, New Jersey. During the period for which the underlying tax assessment was made, each of the three plaintiffs was a director and corporate officer of GBF, and owned corporate shares as detailed in the chart at page 110-111 of this opinion, infra.
During the relevant time period, there was a fourth “partner,” Michael Simons, who was employed as the general manager of the retail facility of GBF. Although Simons was not an officer, shareholder, or director of GBF, he ran the day-to-day operations of the corporation. Simons, whose employment could be terminated by any of the three plaintiffs, hired and fired all store personnel, arranged for the acquisition of all goods to be sold, and arranged for lines of credit for the corporation. However, actual signatures for the lines of credit were made by the three plaintiffs.
Simons visited with George Skaperdas and Barry Birkenholtz in their Manhattan office at least once a week, and more often during the busy fall season. At those meetings, it appears that Simons reported to George Skaperdas and Barry Birkenholtz about the business and may have submitted checks for their signatures. Check signing authority was vested with the three plaintiffs but not with Simons. It appears that the information necessary to prepare sales tax returns was furnished by Simons to Sheldon Friedman, the corporation’s accountant, who prepared those returns which were signed at different times by Friedman, Simons or one of the three plaintiffs.
*94 Although GBF’s corporation business tax returns show that the three plaintiffs devoted 5% to 50% of their time to GBF, they testified that they devoted less than that amount of time. While corporate business tax returns indicated that corporate-owned vehicles were used for corporate purposes, Birkenholtz and George Skaperdas testified that those vehicles were used exclusively for personal purposes. I conclude that George Skaperdas and Barry Birkenholtz took a cavalier attitude with regard to conforming their actual activities to which they testified and their tax reporting obligation. This brings into question the accuracy of their testimony. Thus, although they testified that Michael Si-mons ran the GBF operation, I conclude that during their weekly meetings they were kept informed of the business operations in Secaucus.
On the other hand, Harry Skaperdas apparently did not participate or have knowledge of these business meetings. In addition to signing corporate documents, his sole involvement with GBF was that during busy periods he would go to the Secaucus store, perform certain tailoring or alterations on the furs, and assist the sales staff.
Additionally, all three plaintiffs used GBF losses to reduce their personal income tax liability and received substantial (between $10,000 and $30,000) cash distributions from GBF in 1988.
The uneontradieted testimony at trial indicates that for certain retail sales involving cash, there was a pattern of under-reporting gross receipts for various tax purposes. The plaintiffs indicate that Simons, their former “partner,” was responsible for this scheme. Only after the three plaintiffs sold their interests in GBF to Simons did they discover these alleged misdeeds. The terms of the sale of GBF by plaintiffs to Simons involved Simons giving notes to the plaintiffs. Payments on those notes are delinquent. Plaintiffs and Simons are in litigation concerning this delinquency.
Thus, it appears that Simons gave false information to Friedman, the accountant, as well as to the three plaintiffs, which resulted in their signing tax returns reflecting understated gross receipts, gross sales, and gross profits. There is no evidence that *95 the amount of sales tax remitted differed from the sales tax liability reported on the sales tax returns. Thus, at the time plaintiffs signed checks in payment of sales tax, the returns and the checks matched up. The questions for this court to resolve, in part, are whether plaintiffs knew or should have known of the sales tax deficiency, and whether they derived any benefit from GBF’s failure to accurately report its sales tax liability.
In Cooperstein v. Division of Taxation, supra, Judge Andrew thoughtfully discussed the law imposing personal liability for persons required to collect sales taxes, such persons being defined under N.J.S.A 54:32B-2(w) to include a corporate officer or employee who “is under a duty to act for such corporation in complying with any requirement of this act____” (emphasis added).
Judge Andrew carefully distinguished between those who had a “duty” or “obligation” to collect a tax and those who had the “authority” to do so. 13 N.J.Tax at 79-81. Citing relevant federal and New York case law, he concluded that officers of a corporation, by virtue of their office alone, had the authority to collect sales tax. However, the duty or obligation to collect the tax could only be determined after an examination of the facts in each case. As Judge Andrew stated:
[U]nexercised authority, without more, is insufficient to impose personal liability upon a corporate officer. The statutory language implicitly requires a fact-sensitive pragmatic inquiry into the corporate activities of an officer or employee before personal liability can be imposed.
[Id. at 81.]
Judge Andrew then listed nine factors which should be considered in analyzing whether a corporate officer has a duty or obligation to collect sales tax. Id. at 88.
I find no better way to analyze the case at bar than by constructing the following table, which analyzes the authority and activity of each of the three plaintiffs relative to the nine factors. I note at the outset, that although the plaintiffs wish to have this court consider the liability of Michael Simons, he is not before this court. Although he may have personal liability for these taxes, *96 such liability does not in itself diminish the obligations of the three plaintiffs, who are in fact before me.
ANALYSIS WITH REGARD TO 9 FACTORS IN COOFERSTEIN v. DIVISION OF TAXATION. 13 N.J. TAX 68, 88 (TAX 1993)
HARRY SKA- GEORGE SKA- BARRY BIRK-FACTORS PERDAS PERDAS ENHOLTZ
1. Contents of Not available. Not available. Not available, the corporate by-laws.
2. Status as an Vice President, Secretary/Trea- President, Di-Officer and/or Director, held surer, Director, rector, held 37% of Stockholder. 15.75% of shares, held 47.25% of shares. shares.
3. Authority to Actual authority Actual authority Actual authority sign checks and signed checks, and signed checks, and signed checks, and actual exercise of this authority.
4. Authority to hire and fire employees and actual exercise of this authority. Actual authority, did not hire or supervise employees. Hired general manager Michael Simons, and appears to have delegated all other hiring authority to him. Actual authority, hired general manager Michael Simons, and appears to have delegated all other hiring authority to him.
5. Responsibility to prepare and/or sign tax returns. Did not prepare. Appears to have signed tax returns. Did not prepare. Appears to have signed tax returns. Did not prepare. Appears to have signed tax returns.
6. Day-to-day in- Signed doci volvement in and checks, business or responsibility for management. Frequent contact Frequent contact with Michael Si- with Michael Si-mons — received mons — received reports and signed reports and signed checks and other checks and other documents. documents.
7. Power to eon- Authority — al-trol payment though not appar-of corporate ently exercised, creditors and taxes. Authority — ap- Authority — appears to have gone pears to have gone along with Michael along with Michael Simons’ sugges- Simons’ suggestions. tions.
8. Knowledge of None. Not apparent, ap- Not apparent, ap-the failure to pears that remit- pears that remit-remit taxes tances equaled fig- tanees equaled fig-when due. ures on returns. ures on returns.
*97 HARRY SKA- GEORGE SKA- BARRY BIRK-FACTORS_PERDAS_PERDAS_ENHOLTZ
9. Derivation of Received divi- Received divi- Received divi-substantial in- dends; used losses dends; used losses dends; used losses come or bene- for personal tax for personal tax for personal tax fits from the reduction; life in- reduction; life in- reduction; life incorporation. surance. surance; and com- surance; and company ear. pany car.
An analysis of the above table shows that all three plaintiffs had authority to collect taxes, and that they received financial benefits from the corporation, but George Skaperdas and Barry Birken-holtz played significantly different roles in the affairs of the corporation than did Harry Skaperdas.
George Skaperdas (47.25%) and Barry Birkenholtz (37.00%) held over 84% of the corporation’s outstanding stock. They each received a company car. As supervisors of store manager Michael Simons, they received frequent reports from him and were kept apprised of his activities. Michael Simons did not have carte blanche to run the store. He reported the details of the New Jersey operations to George Skaperdas and Barry Birkenholtz. They signed checks and other financial documents submitted to them which Michael Simons did not have the authority to sign. On the other hand, Harry Skaperdas was a tailor who played no managerial role in the operation of the New Jersey retail operations. He held less than 16% of the outstanding stock, and he had no company car.
In his thorough opinion in Cooperstein, Judge Andrew explained why this court would look to New York and Federal interpretive case law but would not consider Ohio law. 13 N.J.Tax at 77 n. 3. Accordingly, I now compare the facts in this case to those in other reported cases which have found corporate officers either responsible for, or absolved from, personal liability for sales tax.
The reported cases where individual corporate officers have avoided liability for unpaid corporate taxes are all factually distinguishable from this ease as it relates to Messrs. George Skaperdas and Barry Birkenholtz.
*98 In Cooperstein, the plaintiff was not involved in day-to-day operations, did not sign checks, and was not consulted as to the payment of corporate debts. Moreover, he received no income, salary, or commission, and he was not a shareholder. Id. at 76-77. As in Cooperstein, it appears that in the present case plaintiffs did not have knowledge of the deficient sales taxes until after the due dates for the payment of such taxes. However, George Skaperdas and Barry Birkenholtz exercised a level of supervision over Michael Simons and GBF’s daily operations far greater than did Mr. Cooperstein over his subordinates. In Chevlowe v. Koerner, 95 Misc.2d 388, 407 N.Y.S.2d 427 (N.Y.Sup.Ct.1978), the officer of the corporation did not participate in the day-to-day management of the corporation, did not sign checks, and did not sign sales tax returns. In Vogel v. New York State Department of Taxation and Finance, 98 Misc.2d 222, 413 N.Y.S.2d 862 (N.Y.Sup.Ct.1979), the officer shareholder did not participate in the day-to-day operations of the corporation.
On the other hand, the facts in the reported cases imposing personal liability for unpaid sales tax bear a greater similarity to the facts in this case. In Cohen v. New York State Tax Comm’n, 128 A.D.2d 1022, 513 N.Y.S.2d 564 (App.Div.1987), the officer taxpayer argued that because he was not involved in the day-today operations of the corporation, he should not be held responsible for unpaid sales taxes. The New York appellate court, operating under a statutory standard identical to New Jersey’s (see Cooperstein, supra), found that responsibility would attach to an individual who negotiated loans, was consulted about the corporation’s activities, and participated in the hiring of at least one employee. In the case at bar, the participation of both Birkenholtz and George Skaperdas with the management of GBF was at least as great as that of the plaintiff in Cohen.
In Blodnick v. New York State Tax Comm’n, 124 A.D.2d 437, 507 N.Y.S.2d 536 (N.Y.App.Div.1986), a New York court found personal liability in part because the officers could point to no one, other than themselves, who would have personal responsibility for the collection of tax. In contrast, plaintiffs here point to Michael *99 Simons as a responsible person. But even if plaintiffs are correct, I find no case which stands for the proposition that if another individual is also responsible, or perhaps has greater responsibility, the lesser involved individuals are absolved of all liability. On the contrary,
the statute expressly applies to “any” responsible persons not just to the person most responsible for the payment of taxes. There may be — indeed there usually are — multiple responsible persons in any company.
[Barnett v. Internal Revenue Service, 988 F.2d 1449, 1455 (5th Cir.1993) cert. denied, — U.S. -, 114 S.Ct. 546, 126 L.Ed.2d 448 (1993) (emphasis added).]
See also Capoccia v. New York State Tax Comm’n, 105 A.D.2d 528, 481 N.Y.S.2d 476 (1984); Massa v. New York State Tax Comm’n, 102 A.D.2d 968, 477 N.Y.S.2d 838 (1984); Ragonesi v. New York State Tax Comm’n, 88 A.D.2d 707, 451 N.Y.S.2d 301 (1982); Malkin v. Tully, 65 A.D.2d 228, 412 N.Y.S.2d 186 (1978).
I find that Barry Birkenholtz and George Skaperdas derived significantly different benefits from GBF than did Hairy Skaper-das, and that their involvement in the management of GBF was significantly different from that of Hairy Skaperdas. Michael Simons reported directly, periodically, and frequently to Barry Birkenholtz and George Skaperdas as the operators of GBF. They were sophisticated businessmen with a comprehensive understanding of business and finance. Although they may not have known about Simons’ underreporting, their failure to detect it was a result of their inattention to their managerial and monitoring responsibilities, given their active role in receiving reports from Simons. On the other hand, Harry Skaperdas was a skilled tailor who received no business reports, although he did occasionally sign -checks, tax returns, and other documents. His lack of sophistication and involvement make his role in the running of GBF analogous to that of the “innocent spouse” in federal income tax liability cases. See I.R.C. § 6013(e) (1986).
Although Barry Birkenholtz, George Skaperdas, and Harry Skaperdas had facially similar roles as shareholders and officers of GBF, and the dividends they received were proportional to their shareholdings, Barry Birkenholtz and George Skaperdas had company cars, whereas Harry Skaperdas did not. Although use of the *100 company cars was intended for business purposes, the evidence reveals that these not inexpensive vehicles (a BMW and a Chevy Trail Blazer) were used for the personal tax-free benefit of Barry Birkenholtz and George Skaperdas, rather than for the business of GBF. In fact, the use of the cars by Birkenholtz and George Skaperdas, but not by Harry Skaperdas, may be reflective of the greater role they played in the management of GBF. One could speculate that the corporation’s payment for these cars was in lieu of compensation to Birkenholtz and George Skaperdas. In short, they derived substantially different financial benefits from the corporation than did Harry Skaperdas.
A careful analysis of the facts iri this case, as compared to the facts in the decided eases, reveals that the involvement of George Skaperdas and Barry Birkenholtz falls on the side of those officers held liable because of their involvement in the actual and financial management of the company. On the other hand, Harry Skaper-das, although he had authority similar to the other two plaintiffs, played a distinctly different role. As this court stated in Cooper-stein, authority alone is not sufficient to impose personal liability for unpaid corporate sales tax. Cooperstein, supra, 13 N.J.Tax at 81. Having heard the testimony and observed the demeanor of all three plaintiffs, I have concluded that George Skaperdas and Barry Birkenholtz were under a duty and obligation to collect sales tax. Harry Skaperdas was not. In sum, the different managerial roles and the various benefits received are the bases for my conclusion that Barry Birkenholtz and George Skaperdas are persons liable, while Harry Skaperdas is not.
Plaintiffs raise several additional arguments:
1. Plaintiffs should be absolved of individual liability because they discharged their corporate responsibilities under the New Jersey Business Corporation Act (N.J.SA 14A:1-1 to 16-1).
The definitions of those who are responsible for the collection of sales tax and the imposition of liability are found in the sales tax *101 statute. There is no reason why corporate officers and directors who meet their obligations under one statute should be absolved of obligations under another statute. There is no reason why obligations under the two statutes should be identical. There is no reason why obligations under the sales tax statute should be limited by the obligations under the Business Corporation Act.
2. Plaintiffs should be absolved of liability because their action was not the proximate cause of the sales tax deficiency.
Assuming that Michael Simons was falsifying records, and assuming that his activities were the proximate cause of the corporate understatement of sales tax, is he the only responsible party? The statute does not speak of a single responsible individual. There may be one or more. See Barnett v. Internal Revenue Service, quoted above at 113. Clearly, all of the plaintiffs and Michael Simons had authority to collect sales tax, yet authority alone is not sufficient to impose individual liability. Cooperstein, supra, 13 N.J.Tax at 81. I have determined that, because of their intimate involvement in the day-to-day operations of GBF, George Skaperdas and Barry Birkenholtz had a duty and obligation to supervise Michael Simons and to inform themselves of his activities. George Skaperdas and Barry Birkenholtz may have been inattentive to that duty, and thus permitted sales tax to remain unpaid. The fact that Mr. Simons may have lied to them and cheated them does not absolve them of their legal responsibility. The fact that they may have an independent cause of action against him for his activities which may be the proximate cause of the corporate sales tax deficiency does not absolve them of their duty and obligation.
3. Because the Director has not adopted regulations with respect to personal liability, no one can be held personally liable for sales tax.
Our Supreme Court’s formulation of the factors which would lead an administrative agency to adopt regulations clearly suggests that the better practice would be for the Division of *102 Taxation to adopt regulations defining a responsible corporate officer under the New Jersey Sales and Use Tax. See Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 331, 478 A.2d 742 (1984). Nevertheless, failure to follow the better practice will not in itself invalidate the agency’s action when the existing statutory language and interpretive case law is sufficiently clear to put taxpayers on notice of the standards to be applied. See Equitable Life Mortgage & Realty Investors v. New Jersey Div. of Taxation, 151 N.J.Super. 232, 240, 376 A.2d 966 (App.Div.1977), certif. denied, 75 N.J. 535, 384 A.2d 514 (1977); Chemical Realty Corp. v. Taxation Div. Director, 5 N.J.Tax 581 (Tax 1983), aff'd o.b., 6 N.J.Tax 448 (App.Div.1984).
The fact that this court can discern from the decided case law nine specific factors to be considered in determining personal liability makes it clear that no further detailed regulation was required under the Administrative Procedure Act, N.J.S.A 52:14B-1 to 21, for the Director’s imposition of personal liability on a corporate officer. Cooperstein, supra, 13 N.J.Tax at 88.
4. The statute imposing sales tax liability on the plaintiffs violates due process because it is unconstitutionally vague.
For the same reasons that a regulation is not required under the Administrative Procedure Act, the statute and existing interpretive case law are adequately specific to resist an argument that the standards are unconstitutionally vague.
In determining whether a statute is unconstitutionally vague, our Supreme Court has set out a hierarchy of tests. Criminal statutes are subject to greater scrutiny than are civil statutes; statutes limiting fundamental constitutional rights (i.e., free speech or free exercise of religion) are subject to greater scrutiny than those which infringe on rights not protected by the Constitution; different standards apply when the challenge to a statute is based on a specific application as opposed to a facial challenge for all applications of the statute. See generally State v. Cameron, 100 N.J. 586, 592-594, 498 A.2d 1217 (1985). See also *103 Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983); State v. Lee, 96 N.J. 156, 164-167, 475 A.2d 31 (1984); State v. Afanador, 134 N.J. 162, 170, 631 A.2d 946 (1993); Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-499, 102 S.Ct. 1186, 1193-94, 71 L.Ed.2d 362, 372 (1982) (and cases cited at nn. 10-15).
In this case, a statute imposing personal liability (an economic regulatory function as opposed to a statute imposing criminal liability) is challenged as it is applied to three individuals. No fundamental first amendment rights are at issue. The level of scrutiny to be applied by the reviewing court is of the lowest level in determining if the statute is unconstitutionally vague. The application is based on an intelligent reading of the statute and an analysis of existing sister state interpretive case law. This court in an earlier determination was able to discern specific areas for analysis required by the statute.
[I]f a statute is not vague as applied to a particular party, it may be enforced even though it might be too vague as applied to others.
[State v. Cameron, supra, 100 N.J. at 593, 498 A.2d 1217.]
By accepting corporate cars, receiving reports from Michael Simons, providing general supervisory oversight of Michael Simons’ activities, reserving for themselves signing authority and exercising that authority, George Skaperdas and Barry Birkenholtz had a duty to act for GBF in complying with New Jersey’s Sales and Use Tax Act. The standards of the statute are not vague when applied to these acts.
As applied to Harry and George Skaperdas and Barry Birkenholtz, the statute imposing personal liability for New Jersey sales tax, when viewed through the lens of prior interpretive case law, is in sharp focus. Persons of common intelligence need not guess at its meaning nor could they differ as to its application. See State v. Afanador, supra, 134 N.J. at 170, 631 A.2d 946 (citing Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)).
Harry Skaperdas is relieved of personal liability with respect to the sales tax obligation of GBF. The court will proceed to the *104 issue of the amount of the liability for George Skaperdas and Barry Birkenholtz.