TAX COURT OF NEW JERSEY



**VITO L. BIANCO**
JUDGE

77 Headquarters Plaza
1st Floor, North Tower
Morristown, NJ 07960-3964
(609) 815-2922 Ext. 54850
Fax (973) 631-6396

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

December 1, 2017

*Via eCourts and Regular Mail*

Sandra Harding,
28 Corwin Street
Kenvil, New Jersey 07847
Plaintiff *pro-se*

Steven J. Colby
Deputy Attorney General
State of New Jersey
Office of the Attorney General
Department of Law and Public Safety
Division of Law
25 Market Street
P.O. Box 106
Trenton, NJ 08625-0106
Attorney for the Defendant

RE: **SANDRA A. LANIER, n/k/a SANDRA A. HARDING** v. **DIRECTOR, DIVISION, OF TAXATION**; DOCKET NOs.: 013087-2015 and 013089-2015

BIANCO, J.T.C.

This letter opinion constitutes the court's decision with respect to a Motion for Summary Judgment filed by defendant, Director, Division of Taxation ("Director") and Cross-Motion for Summary Judgment inferred by the court from the response of plaintiff *pro se* , Sandra A. Lanier, A/K/A Sandra A. Harding ("Ms. Harding"). The Director argues that Ms. Harding is liable for all outstanding sales and use tax deficiencies and delinquencies for the periods of April 2004 through

*

March 2005, and April 2005 through March 2006, during which she was the sole proprietor and one hundred percent owner of a company known as Tech Enterprises. Ms. Harding contends that virtually no sales tax should have been due; furthermore, she claims to be an *innocent spouse*, arguing that her former husband, now deceased, was at all times solely responsible for the operation of Tech Enterprises, and any taxes that may be due from the operation thereof. For the reasons set forth herein, both motions are denied.

### BACKGROUND, FACTS, AND PROCEDURAL HISTORY

The following facts are not materially in dispute. On January 20, 2005, Ms. Harding filed a Business Registration Application for Tech Enterprises with the State of New Jersey Division of Revenue and Enterprise Services. The application indicates that Tech Enterprises began operation on April 1, 2004, and lists Ms. Harding as the company's sole proprietor and one hundred percent owner. Ms. Harding remained registered as the sole proprietor and one hundred percent owner of Tech enterprises until March 23, 2006, at which time her former and now late husband, Gary Lanier acquired Tech Enterprises and became the sole proprietor and one hundred percent owner.[1]

On November 1, 2004, Ms. Harding filed a New Jersey Division of Taxation Sales and Use Tax Quarterly Return for the quarter ending June 30, 2004. She also filed a joint New Jersey Income Tax, NJ-1040 Resident Return, with her husband, for tax years 2004, 2005, with both returns listing net profits from business. For the tax year 2006, Ms. Harding filed a separate New Jersey Income Tax, NJ-1040 Resident Return.

On July 27, 2005, Ms. Harding received a Notice and Demand for Payment, dated July 22, 2005, along with a Schedule of Liabilities, regarding Sales and Use Tax deficiencies, recovery

---

[1] February 14, 2007 Ms. Harding and Gary Lanier obtained a Judgment for Divorce Pursuant to Default. As a part of the dissolution of the marriage Ms. Harding agreed to legally terminate herself from all aspects of Tech Enterprises, including but not limited to removal as plan administrator. Gary Lanier has since passed away.

fees, and delinquencies for the period of April 2004 through March 2005. A Certificate of Debt, DJ Number 296, 308-05, was issued against Ms. Harding in accordance with the July 22, 2005 Notice and Demand for Payment.

On October 1, 2008, Ms. Harding received a Notice of Finding of Responsible Person Status, dated September 29, 2008, regarding Sales and Use Tax deficiencies for the period of April 2005 through March 2006. A Certificate of Debt, DJ Number 36, 913-09, was issued against Ms. Harding, for Sales and Use Tax deficiencies for the period of April 2005 through March 2006.

Formal motion papers were filed by counsel on behalf of the Director.[2] Ms. Harding opposed the motion informally by email from which the court inferred a Cross-Motion for Summary Judgment on her behalf. Both parties waived oral argument.

## APPLICABLE LAW

### A. SUMMARY JUDGMENT

The purpose of Summary Judgment procedure is to provide "a prompt, businesslike and inexpensive method of disposing of any cause which a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion clearly shows not to present any genuine issue of material fact requiring disposition at trial." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 530 (1995) (citing Ledley v. William Penn Life Ins., Co., 138 N.J. 627, 641-42 (1995) (quoting Judson v. Peoples Bank & Trust Co., of Westfield, 17 N.J. 67, 74 (1954)).

---

[2] In its answer to the complaint, the Director, reserved the right to move to dismiss Ms. Harding's complaint on the ground that she failed to file a timely protest with the Director as required by law. N.J.S.A. 54:49-18. The Director further reserved the right to move to dismiss Ms. Harding's complaint based on any applicable ground enumerated in R. 4:6-2. Although these affirmative defenses were reserved, they were not raised or argued in the Director's papers on the present Motion for Summary Judgment, and said defenses are not addressed or determined herein.

When deciding a Motion for Summary Judgment under R. 4:46-2, courts must determine whether:

> [T]here exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the nonmoving party.
>
> [Brill, supra, 142 N.J. at 523].

Moreover, "[t]he 'Judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Id. at 540, quoting Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249 (1986).

In Brill, the New Jersey Supreme Court adopted a less stringent Summary Judgment standard. The Brill Court synthesized the Summary Judgment standard with the directed verdict standard found in R. 4:40-2. The Court explained that "[t]he essence of the inquiry in each [Summary Judgment, R. 4:37-2(b), R. 4:40-1 and R. 4:40-2] is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 536, quoting Anderson, supra, 477 U.S. at 251-52.

In sum, the Brill Court emphasized that the "thrust of [the] decision is to encourage trial courts not to refrain from granting Summary Judgment when the proper circumstances present themselves." Id. at 541.

When the movant demonstrates a right to Summary Judgment, the burden shifts to the opponent of the Motion to show by competent evidence that a genuine issue of material fact exists.

4

See Robbins v. City of Jersey City, 23 N.J. 229, 241 (1957); James Talcott, Inc. v. Shulman, 82 N.J. Super. 438, 443 (App. Div. 1964).

The court finds that the present case is not ripe for Summary Judgment in favor of either party, as it is clear that questions of material fact need to be resolved.

## B. THE IMPOSITION OF SALES TAX UNDER N.J.S.A. 54:32B-3

### 1. SALES AND USE TAX – CONTRACTORS Form ST-8

Ms. Harding contends that "virtually no sales tax should have been due on this type of business as the majority of the work fell under the ability to file ST-8 forms for the work performed."[3] (See State of New Jersey Division of Taxation, Sales Tax Form, ST-8 (11-99, R-10) ("If [a contractor enters] into a contract to add to or improve real property by a capital improvement . . . , and the property owner issues . . . a . . . completed Certificate of Capital Improvement [i.e. Form ST-8], . . . [the contractor] should not collect sales tax from the property owner.")[4]

Ms. Harding suggests in a prior certification to the Superior Court[5] which she attached to the complaint in this matter, that Tech Enterprises operated as a *security system installation company*. The work performed by Tech Enterprises during the period of April 2004 through March 2006, was done *prior to* the 2006 amendment to N.J.S.A. 54:32B-3 (L. 2006, c. 44). Before October 1, 2006, installation of carpeting and other flooring, and *the installation of security, burglar and fire alarm systems were exempt* capital improvements, therefore not subject to sales

---

[3] While Ms. Harding suggests in her email response to the Director's motion that ST-8 forms were filed, it is not clear to the court at this point that said forms were in fact filed.

[4] The court was unable to locate ST-8 forms specifically for use in 2004, 2005, and 2006 prior to October 1, 2006, and it is not clear that ST-8 form with those specific revision dates even exist. Furthermore, Ms. Harding did not provide copies of the ST-8 forms she suggests were filed for work performed by Tech Enterprises during for the period of April 2004 through March 2006. The court was able to locate the ST-8 form revised in 1999 from which to glean the contractors' obligations and potential exemptions prior to the amendment of N.J.S.A. 54:32B-3 (L. 2006, c. 44).

[5] State of New Jersey vs. Sandra A. Lanier n/k/a Sandra A. Harding and Tech Enterprises, Docket.; TX 021818 05, Judgement No. DJ 296308 05, Certification of Defendant in Support of notice of Motion for Order Deeming Judgment Satisfied for Sandra A. Lanier n/k/a Sandra A. Harding, individually.

5

and use tax.[6] N.J.S.A. 54:32B-3; see also, Summary of 2006 Tax Legislation, Sales and Use Tax Rate Increase and Expansion of Tax Base, L. 2006, c. 44; and see Notice to Construction Industry: Obligation of Subcontractor to Collect sales Tax for Taxable Capital Improvements in the Performance of Multi-Trade Construction Contracts, N.J.A.C. 18:24-5.6(b)(2), effective December 1, 2008; see further http//www.state.nj.us/treasurt/taxation/salestaxbase.shtml, last visited November 16, 2017.[7]

Any claimed sales and use tax exemption for work performed by Tech Enterprises during the period of April 2004 through March 2006 would be controlled by N.J.S.A. 54:32B-3, prior to the statute's 2006 amendment; and, assuming *arguendo* that Ms. Harding's characterization of Tech Enterprises as a *security system installation company* is in fact accurate, then the services provided by Tech Enterprises for the relevant time period, may indeed be exempt. Accordingly, the court must determine the factual questions as to exactly what sales and/or services were provided by Tech Enterprises during the relevant time, and whether such sales and/or services either qualified for an exemption, or were fully taxable, at the time they were performed.

---

[6] See by contrast, Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J. Tax 584 (1997), where the issue was whether or not the imposition of sales tax on Aetna's "receipts from the installation, servicing and monitoring of fire and burglar alarm systems" Id. at 585 (emphasis added), was proper. The Aetna court affirmed the Director's final determination assessment of sales tax against Aetna "to the extent that it concludes that the burglar and fire alarm *monitoring* services provided by Aetna are subject to sale tax pursuant N.J.S.A. 54:32B-3." Id. at 590. The court reasoned, "[t]he monitoring of burglar and fire alarms by means of a two way method of electronic communication is unquestionably provided in connection with and by means of 'telecommunications' and included in the scope of [N.J.S.A. 54:32B-3] because the service provided is clearly dependent upon telecommunication." Id. at 588. In the present case, however, this court does not have sufficient facts to determine whether Tech Enterprises, in addition to the installation of security systems, monitored them as well.

[7] L. 2006, c. 44 amended the Sales and Use Tax Rate, and Expanded the Tax Base, making *the installation of security, burglar and fire alarm systems* taxable capital improvements. As of October 1, 2006 a distinction must be made between *exempt* capital improvements from *taxable* capital improvements. N.J.S.A. 54:32B-3 (amended by L. 2006, c. 44). Currently, filing form ST-8 renders *certain capital improvements* (i.e. those outlined as capital improvements in N.J.S.A. 54:32B-3(b)2 and 4) exempt from sales and use tax.

**2. PERSONS REQUIRED TO COLLECT TAX UNDER N.J.S.A. 54:32B-2(W) AND N.J.S.A. 54:32B-14**

Ms. Harding argues that she is not personally liable for the tax delinquencies and deficiencies claiming she is an *innocent spouse*. The Director rejects her argument noting that *innocent spouse* relief is only available under federal law, and that Ms. Harding may not claim relief based on this theory for New Jersey Sales and Use Tax.

While *innocent spouse* relief has not been specifically codified and incorporated into New Jersey's Tax Statutes, the concept and legal principles immersed within it are not new to our jurisprudence. The court is satisfied that the definitions of "persons required to pay tax" under N.J.S.A. 54:32B-2(w) and personal liability under N.J.S.A. 54:32B-14(a) are analogous to the relief contemplated by the federal *innocent spouse* relief statute 26 U.S.C.A. § 6015.

In order to determine whether the imposition of sales tax under N.J.S.A. 54:32B-3 is proper the court must look to the definition of who is required to collect the tax under the SUT Act. Under N.J.S.A. 54:32B-2(w) "Persons required to collect tax" are defined as "(e)very vendor of tangible personal property or services. . . . including any officer employee of a corporation or of a dissolved corporation who as such officer or employee is under a duty to act for such corporation in complying with any requirement of this act. . . ." Furthermore, N.J.S.A. 54:32B-14(a) provides that "(e)very person required to collect any tax imposed by this Act shall be personally liable for the tax imposed, collected, or required to be collected under this act."

In Cooperstein v. State, Div. of Taxation, 13 N.J. Tax 68, 80 (Tax 1993), the Tax Court found that not all officers are personally liable for unpaid taxes of a corporation, but rather, only those officers who are under a duty to pay the taxes. "[Un]exercised authority, without more, is insufficient to impose personal liability upon a corporate officer . . . the statutory language

implicitly requires a fact-sensitive pragmatic inquiry into the corporate activities of an officer or employee before personal liability can be imposed." Id. at 81.

In Skaperdas v. Director, Div. of Taxation, 14 N.J. Tax 103 (Tax 1994) the Tax Court made a fact-sensitive pragmatic inquiry into the corporate activities of three individuals who were officers, directors, and shareholders of a corporation, including plaintiff, Harry Skaperdas. See, Skaperdas, supra 14 N.J. Tax at 106. The court determined that Mr. Skaperdas was "relieved of personal liability with respect to the sales tax obligation" of the corporation, Id. at 117, reasoning that an officer who "occasionally signs checks, tax returns, and other documents," but is otherwise "unsophisticated, and lacks involvement" in the running of the corporation is more analogous to that of an "innocent spouse." Id. at 113; see also, 26 U.S.C.A. § 6015. Acknowledging that New Jersey law does not specifically recognize "innocent spouse" relief, Skaperdas, supra, 14 N.J. Tax at 113-114, the court further reasoned that although Mr. Skaperdas, and the other officers had similar authority, their roles in the corporation were significantly different. Id. at 114; citing, Cooperstein, supra, 13 N.J. Tax at 81 ("authority alone is not sufficient to impose personal liability for unpaid corporate sales tax").

The rule set out in N.J.S.A. 54:32B-2(w) is analogous to the *innocent spouse* relief contemplated by 26 U.S.C.A. § 6015. Both statutes are based in equity, and designed to avoid the injustice of imposing personal liability on individuals who, when considering all of the facts and circumstances, did not have the duty to pay the taxes on the corporation. See generally, I.R.S. Publication 971 (October 2014) at 6; and Cooperstein, supra, 13 N.J. Tax at 88.

Whether addressing *innocent spouse* relief as contemplated under 26 U.S.C.A. § 6015, or finding of responsible persons under N.J.S.A. 54:32B-2(w), it is incumbent on the court here to make a "fact-sensitive and pragmatic inquiry" Cooperstein, supra, 13 N.J. Tax at 81, into the

8

corporate duties and activities of Ms. Harding before personal liability can be imposed, as her involvement (or lack thereof) in the corporate day to day activities in Tech Enterprises, may be analogous to that of an *innocent spouse* as was the case for Mr. Skaperdas.

## CONCLUSION

The court finds that there exist genuine issues of material fact which preclude the resolution of this matter in a summary fashion.  Accordingly, the Cross-Motions for Summary Judgment are denied.  The court's order consistent with this opinion has been uploaded to *eCourts* and is enclosed with this letter opinion.

Very truly yours,


/s/Hon. Vito L. Bianco, J.T.C.

VLB/MK:tms
Encl.

9