NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

_____

ESTATE OF MICHAEL R.
MONIHAN AND
HOLLY P. MONIHAN,

Plaintiffs,

v.

DIRECTOR, DIVISION OF
TAXATION,

Defendant.

_____

:     TAX COURT OF NEW JERSEY
:
:
:
:
:
:     CIVIL ACTION
:     DOCKET NO. 012125-2021
:
:
:
:
:
:     Approved for Publication
:     In the New Jersey
:     Tax Court Reports
:
:
:
:

Decided: January 14, 2026

Howard Pashman and Justin P. Kolbenschlag for Plaintiffs
(Pashman Stein Walder Hayden, PC, attorneys).

Judith O'Malley for Defendant
(Matthew J. Platkin, Attorney General of New Jersey, attorney).

NUGENT, J.T.C.

This opinion decides the cross-motions for summary judgment filed by the parties. The issue is whether Defendant, the Director, Division of Taxation properly reclassified as wages, commissions from the sale and rental of real estate which Michael and Holly Monihan reported on their New Jersey gross income tax returns

1

(GITR) as business income. Plaintiffs argue that the commissions were properly treated as business income on their tax returns as consistent with the terms of a 1989 independent contractor agreement between plaintiff Michael Monihan and a realty company of which he was a fifty-percent owner and corporate officer, and that Defendant must accept the independent contractor election of Michael Monihan therein as mandated by the Real Estate License Act, N.J.S.A. 45:15-1 to -42 (commonly known as the Brokers Act, hereinafter the Act), and the Act as interpreted in Kennedy v. Weichert Co., 257 N.J. 290 (2024).

The court finds that Michael Monihan was an employee as defined under N.J.A.C. 18:35-7.1(e) ("an officer of a corporation shall be considered an employee of the corporation") and affirms Defendant's income reclassification. Defendant's cross-motion for summary judgment is granted. Plaintiffs' motion for summary judgment is denied.[1]

**FACTS AND PROCEDURAL HISTORY**

---

[1] The complaint originally captioned "Michael R. Monihan and Holly P. Monihan v. Director, Division of Taxation" was amended to substitute the Estate of Michael R. Monihan for Michael R. Monihan due to his passing during the pendency of the action. Within this opinion, the court will refer only to Michael Monihan, since the commissions at issue were earned by him. Holly Monihan, his spouse, is a named party due to the jointly filed GITRs. The court will refer to Mr. Monihan as Taxpayer, plaintiffs jointly as Taxpayers, and defendant as Taxation.

The court finds the following facts to be undisputed based on the parties' respective certifications and exhibits submitted in support of the motions.

For all periods relevant to the assessments, Taxpayer, a licensed New Jersey real estate broker, was a fifty-percent shareholder of Monihan Realty, Inc. (Monihan Realty or the company), an S corporation, located in Ocean City, New Jersey. The primary business of the company was the sale and rental of residential real estate. At the company, Taxpayer wore many hats. As a company officer (President and Treasurer), he performed management functions such as procuring insurance, signing income tax returns, recruiting salespeople, coordinating accounting and legal services, and the like. He was also a broker-salesperson and the Broker of Record at the company.

Taxpayer and the company entered a "Broker-Salesperson Independent Contractor Agreement," or "ICA," dated November 19, 1989, regarding Taxpayer's sales and rental activity. In the agreement Taxpayer was designated as Salesperson, and the company was designated as Broker. Taxpayer signed the agreement for the company and for himself. The ICA reads:

> INDEPENDENT CONTRACTOR. This Agreement does not constitute employment of Salesperson by Broker and Broker and Salesperson acknowledge that Salesperson's duties under this Agreement shall be performed by him in his capacity as an independent contractor . . . The Salesperson shall not be treated as an employee for Federal, State or local tax purposes with respect to services performed in accordance with the terms of this Agreement.

3

Taxpayer received the following compensation from the company: (i) wages in connection with his services as an officer/employee, for which he received a Form W-2; (ii) his distributive share of S corporation income, for which he received Form K-1; and (iii) commissions on his individual sales and rentals of real estate, for which he received a Form 1099-MISC.

For tax years 2016 through 2018, respectively, Taxpayers jointly filed GITRs on which they reported income from three categories as follows: (i) wages: $41,600; $41,600; and $41,600; (ii) pro rata share of S corporation income: $234,563; 285,673; and $225,336; (iii) business income: $111,941; $86,433; and $0. Taxpayers categorized the "business income" as net profits from business (reported on Schedule C of the returns before expenses) comprised of real estate commissions, which per the 1099-MISC was $192,838.11; $187,522.51; and $105,311.90.

Taxation audited the GITRs and issued a Notice of Deficiency dated March 19, 2020, reclassifying the 1099-MISC income as W-2 income. The "Explanation of Adjustments" on each notice stated that the W-2 wages "should have been added to include 1099-Miscellaneous income" based on the classification of a corporate officer as an employee, under N.J.A.C. 18:35-7.1(e). This increased the wage income from that reported to $234,438.22; $229,123.00; and $146,912.00, for each respective tax year. As part of the reclassification of income, Taxation disallowed the expenses claimed by Taxpayer on Schedule C in the amounts of $66,962;

4

$87,514; and $92,023, for the corresponding tax years. These adjustments resulted in a demand for taxes, plus interest and penalties, totaling $24,406.30.

Taxpayers timely protested the audit to Taxation's Conference and Appeals Branch (CAB). CAB examined various documents provided (including prior years' GITRs) and concluded that the audit conducted on March 19, 2020, was "correct," thus "upheld" it as being in accord with N.J.A.C. 18:35-7.1(e).

Taxation then issued a final determination on June 17, 2021, reiterating CAB's findings and conclusions. The final tax demanded, with interest and penalties less credits, was $7,288.39.[2] Taxpayers timely filed a complaint in the Tax Court then moved for summary judgment.

**ANALYSIS**

A. <u>Appropriateness of Summary Judgment</u>

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." <u>R.</u> 4:46-2(c); <u>Brill v. Guardian Life Ins. Co. of Am.,</u> 142 N.J. 520, 523 (1995).

---

[2] The tax liability of $24,406.30 was reduced to $7,288.39 based on 2019 and 2020 credits applied in the amount of $17,117.91.

Taxpayer argues that his tax reporting is governed by the language of the Brokers Act as amended in 2018. The Act was amended to require that a real estate salesperson and/or broker-salesperson and their employing broker define the business association as either employer/employee or independent contractor, then memorialize that election in writing. N.J.S.A. 45:15-3.2. Taxpayer contends that the 1989 ICA, the plain language of the Brokers Act, and the interpretive case law, all support his position that he earned the real estate commissions from the company as an independent contractor rather than an employee. Based on Taxpayer's 1989 ICA, he contends his W-2 income as an employee was distinct and unrelated to the commission income he earned working as a broker-salesperson for the company. Therefore, Taxpayer concludes that he correctly reported commissions (net of business deductions) on Schedule C, as business income.

Per Taxation, the court should find the proper classification of Taxpayer's income depends on the tax laws and regulations rather than the Brokers Act. Taxation argues that as a corporate officer under N.J.A.C. 18:35-7.1(e)(1), Taxpayer is an employee for purposes of the New Jersey Gross Income Tax Act. Further to that regulation, an employee must report all remuneration for services rendered as wage income under N.J.S.A. 54A:5-1(a) and N.J.A.C. 18:35-1.2. In reliance thereon, Taxation concludes that as an officer of the company, Taxpayer is an employee of the company and must report the commission income as wages.

6

Based on the undisputed facts, the issue presented is whether Taxation correctly reclassified as wages Taxpayer's commissions generated from sales and rentals of real estate and reported on Form 1099-MISC. Thereby, resolution via summary judgment is appropriate.

B. The New Jersey Gross Income Tax Act

The New Jersey Gross Income Tax (GIT) Act, N.J.S.A. 54A:1-1 to 12-6, taxes various categories of specific income. As relevant here, one income category is "[s]alaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered whether in cash or in property." N.J.S.A. 54A:5-1(a). Another income category is "net profits from business" which includes "net income from the operation of a business, profession or other activity" after a deduction "for all costs and expenses incurred in the conduct thereof," except for certain expenses which cannot be deducted. N.J.S.A. 54A:5-1(b).

In connection with earnings, the regulations provide that "[i]ncome derived by a taxpayer in the taxpayer's capacity as an employee, as defined in N.J.A.C. 18:35-7.1, shall not be taken into account in determining the taxpayer's net profits from business, but rather shall be taxed under N.J.S.A. 54A:5-1a (salaries, wages, etc.)." N.J.A.C. 18:35-1.1(c)(1).

Similarly, "[i]f an individual is an employee as defined in N.J.A.C. 18:35-7.1, all earnings in connection with employment are deemed to be, and shall be reported

by the taxpayer as, wages, salaries, commissions, bonuses, and other remuneration received for services rendered, pursuant to N.J.S.A. 54A:5-1a." N.J.A.C. 18:35-1.2(b). "In no case shall an employee report his or her earnings as net profits from business as defined by N.J.S.A. 54A:5-1b." N.J.A.C. 18:35-1.2(b).[3]

Taxation reclassified Taxpayer's commissions as wage income based on his status as a corporate officer under N.J.A.C. 18:35-7.1(e)(1), which reads:

> 1. An officer of a corporation shall be considered an employee of the corporation, except that an officer of a corporation who as such does not perform any services, or performs only minor services, and who neither receives nor is entitled to receive, directly or indirectly, any remuneration shall not be considered an employee of the corporation.

The regulation begins with an extensive definition of "employee" and includes fourteen factors for determining whether an individual is in an employer-employee relationship. N.J.A.C. 18:35-7.1(b).[4] Taxation contends that an overwhelming number of factors in the regulation also weigh in favor of classifying Taxpayer as an employee. If such relationship exists, then "the designation or description of the relationship by the parties as anything other than that of employer

---

[3] Notably, "employee" is defined in N.J.A.C. 18:35-7.1(a) "[f]or the purposes of N.J.A.C. 18:35-7.2." N.J.A.C. 18:35-7.2 is a withholding regulation which requires employer withholding of tax from employee wages.

[4] The factors are listed and discussed later in this opinion.

and employee" such as for instance, as an "independent contractor," is considered "immaterial." N.J.A.C. 18:35-7.1(d).

C. The Brokers Act and the Kennedy Decision

The Brokers Act requires any person engaged in activities as a real estate salesperson or broker to be licensed. The Act's provisions regulate licensing issues to include educational requirements, payment of referral fees, and other industry issues. In 2018 the Act was amended to require that parties so engaged in real estate activities elect a business affiliation as either an independent contractor or employee.

Thereby, the Act added N.J.S.A. 45:15-3.2, entitled "Written Agreement." P.L. 2018, c. 71, § 3. It states as follows:

> a. No broker-salesperson or salesperson shall commence business activity for a broker and no broker shall authorize a broker-salesperson or salesperson to act on the broker's behalf until a written agreement, as provided in this subsection, has been signed by the broker and broker-salesperson or salesperson. Prior to an individual's commencement of business activity as a broker-salesperson or salesperson under the authority of a broker, the broker and broker-salesperson or salesperson shall both sign a written agreement which recites the terms under which the services of the broker-salesperson or salesperson have been retained by the broker.
>
> b. Notwithstanding any provision of N.J.S.A. 45:15-1 et seq. or any other law, rule, or regulation to the contrary, a business affiliation between a broker and a broker-salesperson or salesperson may be that of an employment relationship or the provision of services by an independent contractor. The nature of the business affiliation shall be

defined in the written agreement required pursuant to subsection a. of this section.

[N.J.S.A. 45:15-3.2.]

The Act was similarly amended in 2022 to apply N.J.S.A. 45:15-3.2 retroactively.  L. 2021, c. 486.  The amendment reads:

1.  Section 3 of this act shall take effect immediately and shall apply retroactively to enforce but not change any written agreement between a broker-salesperson or salesperson and a broker where the written agreement defines, sets forth, identifies or provides that the broker-salesperson or salesperson is or was an independent contractor. The remainder of this act shall take effect on January 1, 2018, . . .

The New Jersey Supreme Court interpreted the Brokers Act and its amendments in Kennedy, an action brought under the Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -15.  Kennedy, a real estate salesperson (petitioner), entered two written ICAs electing to affiliate as an independent contractor with Weichert, the real estate broker.  257 N.J. at 294-95.  Weichert incurred expenses for the petitioner's sales activities and deducted the same from his compensation.  Id. at 297.  The petitioner filed a class action suit alleging that Weichert misclassified him and other salespersons as independent contractors and deducted fees and expenses from their commissions in violation of the WPL.  Ibid.  The WPL governs the time and mode of employee wages and does not apply to independent contractors.

Weichert moved to dismiss the petitioner's complaint for failure to state a claim. 257 N.J. at 298. The trial court denied the motion, ruling that the terms of the parties' agreement did not govern the employment classification. The trial court looked instead to the test set forth in Hargrove v. Sleepy's, LLC, 220 N.J. 289 (2015) used to classify a worker as either an employee or independent contractor under the WPL. Kennedy, 257 N.J. at 298. Colloquially known as the ABC test, it "presumes an individual is an employee" unless the employer can show the independent nature of the individual's work activities. Hargrove, 220 N.J. at 305.

The Kennedy case was met with appeals and a remand as to the factors to be applied in resolving the petitioner's employment status and later, on the issue of retroactivity in the context of both the 2018 and 2022 amendments to the Brokers Act. The case was ultimately returned to the Supreme Court on the issue of the petitioner's employment classification. The Appellate Division previously reversed the trial court's ruling that the classification was dependent upon application of the ABC test. Instead, the Appellate Division determined that the classification required a multi-factor analysis, with the ICA being one factor among others. Kennedy v. Weichert Co., 474 N.J. Super. 541, 559 (App. Div. 2023).

The Supreme Court reversed the ruling of the Appellate Division. In reaching its decision, the Supreme Court focused on the parties' ICA, and the "notwithstanding" clause found under N.J.S.A. 45:15-3.2(b) of the 2018

11

Amendment. As framed by the Court, the issue was whether the ICA agreement between a real estate broker and a real estate salesperson excludes the salesperson from treatment under the WPL:

> The plain language of the Brokers Act addresses the question raised by this appeal . . . Here, the real estate broker and the real estate salesperson agreed in writing to affiliate in an independent contractor relationship, thus complying with N.J.S.A. 45:15-3.2(a) and (b). The Brokers Act expressly defines the consequences of that choice; it provides that brokers and broker-salespersons or salespersons may affiliate in an independent contractor relationship, "[n]otwithstanding any provision of" the Brokers Act "or any other law, rule, or regulation to the contrary." N.J.S.A. 45:15-3.2(b). The Legislature's use of the word "notwithstanding" is significant; [i]n construing statutes, the use of such a notwithstanding clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section. Thus, in the Brokers Act, the Legislature clearly intended that if the parties' business affiliation agreement under N.J.S.A. 45:15-3.2 conflicts with another law, rule or regulation, the agreement will prevail.
>
> [Kennedy, 257 N.J. at 310.] (citation omitted).

The Court then continued:

> Under the Brokers Act, the parties' agreement to an independent contractor affiliation is not merely one of several factors in the analysis, as the Appellate Division viewed it to be. To the contrary, if the parties have agreed in writing to a business affiliation in compliance with the Brokers Act, that agreement is dispositive. If a written agreement entered into pursuant to N.J.S.A 45:15-3.2 states that the broker-salesperson or salesperson is an independent contractor, a court must enforce its terms.

12

[Id. at 311-12.] (citation omitted).[5]

In reliance on the Brokers Act, as amended, and the Court's ruling in Kennedy, Taxpayer argues that a written ICA between a broker and salesperson that identifies their relationship as either employee or independent contractor defines that relationship, for all purposes. Taxpayer contends that he, like the petitioner in Kennedy, entered an ICA with the company and elected a business affiliation. Therein, Taxpayer claimed his status to be an independent contractor for his "book of business" constituting the sales and rentals of residential real estate he garnered

---

[5] Justice Patterson added a footnote addressed to a claim by petitioner Kennedy and amicus (New Jersey Department of Labor and Workforce Development) both of whom had urged a narrow construction of the amendment. The Court disagreed with the suggested interpretation that "N.J.S.A. 45:15-3.2 mandates enforcement of the parties' agreement to an independent contractor agreement only when a claim arises under the Brokers Act itself and that the provision has no impact on the application of other statutes such as the WPL to real estate brokers-salespersons or salespersons." Kennedy, 257 N.J. at 309, n.3. Per the Court, such a narrow reading "directly conflicts with the statutory language." Ibid.

This court does not have the jurisdiction to interpret whether N.J.S.A. 45:15-3.2 should be construed to apply to other statutory causes of action that do not involve a tax matter or actions that are not "cognizable in the Superior Court which raise issues as to which in matters involving taxation is desirable, and which have been transferred to the Tax Court pursuant to the Rules of the Supreme Court." N.J.S.A. 2B:13-2; See generally James Const. Co., Inc. v. Dir., Div. of Taxation, 18 N.J. Tax 224, 242 (Tax 1999) (holding that the Legislature did not intend to expand the Tax Court's jurisdiction to include judicial review of unemployment contribution matters). However, the Tax Court, within an ongoing action under its jurisdiction, can interpret whether the Brokers Act was construed to apply to the New Jersey Legislature's tax statutes and agency regulations. N.J.S.A. 2B:13-2.

for the company as a real estate salesperson. Relying on the plain language of the Act, Taxpayer contends that the ICA must govern "notwithstanding . . . any other law, rule, or regulation to the contrary." N.J.S.A. 45:15-3.2(b). Per Taxpayer, the GIT's regulation is contrary to the Brokers Act since a corporate officer must be classified as an employee under the regulation. However, Taxpayer contends that the plain language of the Brokers Act renders Taxpayer an independent contractor as set forth in the 1989 ICA. Thereby, he states, the statutes attain contrary results as applied to these facts.

Taxpayer finds support in the Supreme Court's declaration of the Legislature's intent that the business affiliation elected under the Act "will prevail" should the "business affiliation agreement under N.J.S.A. 45:15-3.2 conflict[ ] with another law, rule or regulation." Kennedy, 257 N.J. at 310. Rather than it being one among several factors to be considered in establishing the relationship, the ICA is "dispositive" and a "court must enforce its terms." Kennedy, 257 N.J. at 311-12. On that basis, Taxpayer urges this court to find that his election as an independent contractor should govern the reporting of his commissions, to the exclusion of the regulations upon which Taxation relies since they conflict.

In support of the reclassification of Taxpayer's MISC-1099 income as wages, Taxation argues that this court should not consider the Brokers Act as relevant to that determination, because if the court were to do so it would create an unintended,

14

impermissible category of taxpayers who would be excluded from the tax regulations, which would have not been intended by the Legislature.

Taxation relies on the plain language of N.J.A.C. 18:35-7.1(e). Because Taxpayer was a corporate officer, Taxation finds the independent contractor election under the ICA irrelevant to the tax issue. Taxation urges the court to find that it properly applied the tax regulations to reclassify Taxpayer's income since the regulations are "presumptively valid" and "should not be invalidated unless they violate the enabling act or its express or implied legislative policies." Richard's Auto City v. Dir., Div. of Taxation, 140 N.J. 523, 530 (1995). Like the taxpayer in Richard's Auto City, Taxation contends that Taxpayer here attempts to impute "legislative intent or the implication of statutory authority" from the Brokers Act onto a valid and duly authorized tax regulation. It contends further, that the GIT regulation is not "contrary to" the Brokers Act to trigger the language of the "notwithstanding" clause.

Taxation suggests for the court to read the Brokers Act as providing guidance or legal authority for Taxpayer's position it would have to read the two statutes in pari materia, which Taxation contends is not plausible in this case, since the GIT Act and the Brokers Act "do not reference each other and were not designed to serve a common purpose." See In re Implementation of L. 2018, c. 16, 467 N.J. Super. 154, 188 (App. Div. 2021) (citing Marino v. Marino, 200 N.J. 315, 331 (2009)). Per

Taxation, the statutes are not subject to being read as Taxpayer suggests, to conflate their separate purposes. This court notes that while both parties agree that in pari materia does not apply, Taxpayer nonetheless contends that the mechanism employed for statutory interpretation is wholly irrelevant to the case, and simply a distraction raised by Taxation.

Taxation argues that because the Brokers Act does not address the tax statutes or regulations the Legislature could not have intended the Brokers Act to apply when the dispute hinges on the payment of taxes. Moreover, the amendments to the Act and the Act's legislative history reveal no purpose to affect taxation. Relying on the presumption that an agency's regulations are both valid and reasonable, it claims that Taxpayer has failed to overcome the presumption. Nor did Taxpayer challenge the validity of N.J.A.C. 18:35-7.1(e), the regulation upon which Taxation relied to reclassify Taxpayer's income.

Finally, Taxation argues that Taxpayer's reliance on the holding in Kennedy is misplaced because the issues differ. The Kennedy case involved a wage statute rather than a tax regulation or tax statute. An d, the parties involved were employer and employee, where Taxation was not a party, unlike in the present case.

The court's analysis begins with the statutory construction of the Brokers Act and the GIT Act.

D. Statutory Construction Analysis

In analyzing statutory construction, courts recognize "[the] duty to seek and give effect to the Legislature's intent." Nw. Bergen Cnty. Utils. Auth. v. Donovan, 226 N.J. 432, 443-44 (2016). Courts address questions of statutory interpretation with an initial review of the relevant provisions' plain language. DiProspero v. Penn, 183 N.J. 477 (2005). Such review requires the courts to "ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Carbajal v. Patel, 468 N.J. Super. 139, 149 (App. Div. 2021) (quoting DiProspero, 183 N.J. at 492). Courts construe statutory language in a common-sense manner and "must examine that language sensibly, in the context of the overall scheme in which the Legislature intended the provision to operate." N.J. Dep't of Envtl. Prot. v. Huber, 213 N.J. 338, 365 (2013) (citing Merin v. Maglaki, 126 N.J. 430, 436 (1992)). A court "may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002). Thus, it is this court's responsibility to "strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void [,] or insignificant." Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020) (quoting G.S. v. Dep't of Human Servs., 157 N.J. 161, 172 (1999)).

"Statutory language is to be construed with the context of the whole statute, its purposes, and the circumstances under which the words were employed . . . ." Grogan v. De Sapio, 11 N.J. 308, 323 (1953) (citations omitted). The Supreme Court of New Jersey "acknowledge[d] that in determining the meaning to be accorded the terms of a statute, legislative purpose is the key to the interpretation of any statute." Richard's Auto City, 140 N.J. at 533 (citation omitted) (internal quotation marks omitted).

*i. Statutory Construction of the Brokers Act*

Taxpayer contends that the Brokers Act allows an ICA to govern taxation status. Taxpayer argues that the Brokers Act's "notwithstanding" clause uses clear language such that the court is to "apply that plain meaning and end [its] inquiry." Garden State Check Cashing Serv., Inc. v. Dep't of Banking & Ins., 237 N.J. 482, 489 (2019). Taxpayer relies on other black letter law to interpret and apply the "notwithstanding" language. See e.g., L.R.B. v. SW Gen., Inc., 580 U.S. 288, 302 (2017) ("[a] 'notwithstanding' clause . . . shows which of two or more provisions prevails in the event of a conflict."); Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 18 (1993) ("notwithstanding language" has been interpreted to "supersede all other laws" since "[a] clearer statement is difficult to imagine."); State v. D.A., 191 N.J. 158, 164 (2007) ("If the plain language leads to a clear and unambiguous result, then

18

the interpretive process should end, without resort to extrinsic sources.") This court finds that Taxpayer's application of these black letter constructs is misplaced.

Taxpayer interprets the plain meaning of the Act's "notwithstanding" clause to allow his ICA to govern all classifications, including taxation of his commission income. Taxpayer argues that the clause, as written, prevails over all other laws, rules or regulations that *could* restrict real estate salespersons' ability to contract as independent contractors. However, Taxpayer's position disregards the Legislature's use of the phrase "to the contrary" which signals that the "notwithstanding" clause has limited override of laws, rules, or regulation.

The court finds that Taxpayer's arguments fail to properly treat this limitation. As set forth in the Brokers Act, the elected business affiliation defined in the written agreement between the parties governs "notwithstanding any provision [of the Brokers Act] or any other law, rule or regulation *to the contrary*." N.J.S.A. 45:15-3.2(b) (emphasis added). Taxpayer interprets the Brokers Act as meant to supersede *any* law. That would render the "to the contrary" phrase unnecessary and meaningless language.

When construing statutes, this court is bound by "the bedrock assumption that the Legislature did not use 'any unnecessary or meaningless language.'" Jersey Cent. Power & Light Co. v. Melcar Utility Co., 212 N.J. 576, 587 (2013) (quoting Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418-19 (2009)). Rather, the

19

court is to "give effect to every word of [a] statute . . ." and "presume that every word in a statute has meaning and is not mere surplusage." Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety, Div. of Consumer Affairs, 120 N.J. 18, 26-27 (1990).

The use of a "notwithstanding" clause with the phrase "to the contrary" in the Act "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override *conflicting* provisions of any other section." Cisneros, 508 U.S. at 18 (emphasis added) (citation omitted). Thus, in contrast with Taxpayer's interpretation, the conflict between the Brokers Act and the GIT Act would be determined if there is a conflict between their overall statutory schemes and the object of the legislation, not the result that attains from application of the statutes. Huber, 213 N.J. at 365 (when construing statutes, the court is to "examine language sensibly, in the context of the overall scheme."). In other words, the fact that a different classification (i.e. employee versus independent contractor) results from application of the Brokers Act versus the GIT Act does not represent a conflict. See also James Const. Co., Inc., 18 N.J. Tax at 224 (noting the legitimate possibility where taxpayers can be both independent contractors and employees under tax and unemployment statutes with distinct statutory standards). As addressed below, no such conflict exists to justify the Brokers Act's independent

20

contractor election overriding classifications derived under the GIT Act or its corresponding tax regulation.

In reaching that conclusion this court turns to its tools for statutory interpretation, the canons of statutory construction, which includes the canon of expresssio unis est exclusio alterius. New Jersey courts have long recognized the canon of expresssio unis est exclusio alterius — the expression of one thing excludes others — as an aid to statutory interpretation. Gangemi v. Berry, 25 N.J. 1, 11 (1957). This canon, although not rule of law, is "purely interpretive in aid of [determining the Legislature's] intention" used by courts with "great caution" when the implication is "clear and compelling, a necessary consequence, not a conjectural or purely theoretical concept." Ibid. Here, the court's application of expresssio unis est exclusio alterius is clear and compelling, a necessary consequence of determining the scope of the "notwithstanding" clause and assessing whether an ICA under the Brokers Act governs or controls classification of income under the GIT Act. As applied here, the expression shows that the Legislature permitted the "notwithstanding" clause's override to only conflicting sources of law and excluded any possible override where no such conflict could exist. That is determined by the plain meaning, considering the overall scheme, not merely because of differing end results. Huber, 213 N.J. at 365.

It is reasonable, under expresssio unis est exclusio alterius, that the Brokers Act's "notwithstanding" clause is inapplicable if its overall scheme does not conflict

21

with the overall scheme of the GIT Act. The Brokers Act's statutory scheme is wholly unrelated to the scheme of both GIT Act and its corresponding regulation. The Brokers Act was enacted "to define, regulate and license real estate brokers and salesmen" and govern their business activities. Kennedy, 257 N.J. at 294. Meanwhile, the GIT Act was enacted by the Legislature as a "revenue raiser" whose purpose was to "impose tax on individuals, estates, and trusts." S. Revenue, Fin. and Approp. Comm. Statement to Assembly Comm. Substitute for A. 1513 (L. 1976, c. 47); Toyota Motor Credit Corp. v. Dir., Div. of Taxation, 28 N.J. Tax 96, 120 (Tax 2014) (citing Cooperstein v. Dir., Div. of Taxation, 13 N.J. Tax 68, 93 (Tax 1993)) (citation omitted). Thus, this court finds, as discussed further below, that the Brokers Act's "notwithstanding" clause does not override the GIT Act or its tax regulation.

Notably, this court is to consider extrinsic sources, such as legislative history, when the strict application of a plain meaning interpretation "would lead to an absurd result or one at odds with the Legislature's statutory scheme." Farmers Mut. Fire Ins. Co. of Salem v. New Jersey Property-Liability Ins. Guar. Ass'n, 215 N.J. 522, 536 (2013). Taxpayer's interpretation of the Brokers Act would allow preferential treatment at odds with the tax laws.

In interpreting the Brokers Act, Taxpayer heavily relies on a plain meaning interpretation of the "notwithstanding" term, to presume that an ICA, under any statutory context, enforces an independent contractor relationship between real estate

brokers and salespersons. Taxpayer's contentions are underpinned by implicitly suggesting that the "to the contrary" phrase is a limitation that is solely result-oriented; that the Brokers Act is intended to override any statute under which Taxpayer would be found not to be an independent contractor. This is the crux of Taxpayer's argument in challenging Taxation's reclassification of his commission income.

Strictly applying Taxpayer's plain meaning interpretation of the Brokers Act to taxation, the Brokers Act's "notwithstanding" clause would permit an ICA to presumptively guarantee an independent contractor relationship between real estate brokers and salespersons for all purposes. The result would allow every real estate salesperson with an ICA to qualify for treatment of commissions as net profits from business, taking business expense deductions, irrespective of the facts under N.J.A.C. 18:35-1.1(c)(1), an absurd result at odds with the statutory tax scheme. Taxpayer's interpretation, which would increase business expense deductions, contradicts the Legislature's taxation scheme aimed to limit deductions to minimize tax shelters and possible loopholes. Smith v. Dir., Div. of Taxation, 108 N.J. 19, 32 (1987). This follows from the Court's view, noting "that the existence of government depends on tax revenues; without such revenues government cannot function." Metpath, Inc. v. Dir., Div. of Taxation, 96 N.J. 147, 152 (1984).

Considering Taxpayer's plain meaning interpretation of the Brokers Act, which would both lead to an absurd result, and is at odds with the Legislature's taxation

23

policy, the court must examine extrinsic sources, such as the Brokers Act's legislative history. Farmers Mut. Fire Ins. Co. of Salem, 215 N.J. at 536. This will determine whether the Brokers Act's "notwithstanding" clause allows an ICA to override the classifications from the GIT Act and the corresponding tax regulations based upon the overall statutory schemes of both statutes.

Both the legislative history of the Brokers Act, and as amended, fail to show that the Legislature intended to address taxation within the Act. In Kennedy, the Supreme Court of New Jersey interpreted the Brokers Act as legislation governing the "business activities of real estate brokers, real estate broker-salespersons, and real estate salespersons." Kennedy, 257 N.J. at 294, which enactment was the Legislature seeking, in part, "to define, regulate and license real estate brokers and salesmen." Id. at 303 (citing N.J.S.A. 45:15-5). Taxpayer's arguments suggest that "business activities" are to be construed as the Legislature also intending to regulate taxation of those parties. This notion is unsupported by the Brokers Act's legislative history and New Jersey case law.

As Taxation properly notes, there were no statements within the 2018 Amendment from the Assembly or Senate Legislative Budget Committees concerning taxation or public finance. Moreover, the Sponsors' Statements to the 2018 Amendment explained that the bill was designed to codify regulations promulgated by the New Jersey Real Estate Commission. The New Jersey Real

24

Estate Commission's statutory authority is expressly limited to regulating the business and licensing activities of the real estate industry, not how it is taxed. Assembly Regulated Professions Comm. Statement to S. 430, (June 11, 2018); Senate Commerce Comm. Statement to S. 430, (Feb. 15, 2018); N.J.S.A. 45:15-5. In addition, the 2018 Amendment's Legislative Fiscal Estimate does not mention any potential reduction of GIT revenue, which, as Taxation correctly notes, would have been accounted for in a fiscal estimate if Taxpayer's notion was correct. Legislative Fiscal Estimate to A-2726 (June 5, 2018).

Taxpayer then contends that the retroactive treatment of the 2018 Amendment, in 2022, somehow further confirms that the "notwithstanding" clause was designed to override the tax regulation. This contention contradicts Taxpayer's stance that the Brokers Act is not to be construed in pari materia with the GIT Act.

New Jersey courts are permitted to construe two separate statutes in pari materia, or "in a way that serves the legislative purposes of both . . . 'in a manner that avoids unreasonable results unintended by the Legislature.'" Ocean City v. Somerville, 403 N.J. Super. 345, 358 (App. Div. 2008) (citing Am. Fire & Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 81 (2006)). However, the statutes must have "the same purpose or object" for the courts to perform in pari materia analysis. Id. at 358 (citing Richard's Auto City, 140 N.J. at 540). Statutes may not be construed in pari materia, when the "plain language of the provisions expressed different

25

regulatory schemes applied to each." Marino, 200 N.J. at 317. It is evident that the plain language of the Brokers Act and the GIT Act express different regulatory schemes and do not share the same purpose or object.

The Brokers Act and its subsequent amendments expressly concern business activities of brokers, broker-salespersons or those with "certain real estate licenses supplementing Chapter 15 [Real Estate Brokers, Broker-Salespersons and Salespersons] of Title 45 [Professions and Occupations Subject to State Boards of Registration and Examination] of the Revised Statutes." See L. 2018, c. 71.

On the contrary, the GIT Act within Title 54A expressly concerns imposing taxes for identified classes of income and is administered by the Director of the Division of Taxation. The Brokers Act and its subsequent amendments make no specific reference to the GIT nor were they designed to serve a common purpose.

Thus, the Brokers Act is not a legitimate basis to challenge Taxation's reclassification of Taxpayer's commission income.

*ii. Statutory Construction of the GIT Act*

Our courts have recognized that "the purpose of the GIT Act is to impose tax on individuals, estates and trusts." Toyota Motor Credit Corp. v. Dir., Div. of Taxation, 28 N.J. Tax 96, 120 (Tax 2014) (citing Cooperstein, 13 N.J. Tax at 93). The GIT Act "only taxes expressly identified classes of income." Koch v. Dir., Div. of Taxation, 15 N.J. Tax 387, 390 (Tax 1995), rev'd on other grounds, 157 N.J. 1

(1999). The GIT Act authorizes the Director of the Division of Taxation to promulgate rules and regulations related thereto. N.J.S.A. 54A:9-17(a). Upon its enactment, the Legislature "made a conscious decision not to incorporate the federal income tax model of including income from all sources and chose, instead, to limit taxable income to . . . specific categories." Weintraub v. Dir., Div. of Taxation, 19 N.J. Tax 65, 76 (Tax 2000). Such taxable income includes, in part, "salaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered whether in cash or in property." N.J.S.A. 54A:5-1(a). It includes as well, "[t]he net income from the operation of a business, profession or other activity after provision for all costs and expenses incurred in the conduct thereof . . . ." N.J.S.A. 54A:5-1(b).

Relevant to Taxpayer's claim, the enumerated sources of taxable income within N.J.S.A. 54A:5-1 may not qualify for deductions of business expenses if the earning party is an employee. N.J.A.C. 18:35-1.1(c)(1); N.J.A.C. 18:35-1.2(b). "Statutes granting exemptions and deductions from taxation are strictly construed against those claiming exemption or deduction." Reck v. Dir., Div. of Taxation, 345 N.J. Super. 443, 454 (App. Div. 2001) (citations omitted). To exempt property or sources of income from a tax burden, "the legislative intent must be expressed in the statute in clear and unmistakable terms." Ibid. (citing United States v. Neeld, 9 N.J. 349 (1952)). "A taxpayer seeking a deduction must be able to point to an applicable

27

statute and show that he or she comes within its terms." Reck, 345 N.J. Super. at 454.

Here, Taxpayer points to the Brokers Act's "notwithstanding" clause to suggest that he is entitled to business expense deductions. Yet the Brokers Act's legislative history reflects that it was limited to "define, regulate, and license" real estate professionals covered within the Act, not to establish a basis for deductions. N.J.S.A. 45:15-5. Thus, Taxpayer's use of the Brokers Act as the basis for his tax deductions is misplaced as no deductions were expressed in "clear and unmistakable terms." Reck, 345 N.J. Super. at 454.

Statutory interpretation results in this court's finding that, despite the existence of Taxpayer's ICA, the Brokers Act and corresponding "notwithstanding" clause do not operate to supplant application of the GIT and the regulations in this matter.

E. N.J.A.C. 18:35-7.1 Analysis

i. *Kennedy v. Weichert is not instructive for reclassification of Taxpayer's income.*

This court finds unsupported Taxpayer's contention that Kennedy is instructive to determine whether Taxation's reclassification of the commission income was proper. First, Taxpayer contends, irrespective of the applicable tax law, the Court's holding in Kennedy is binding on this court because of existing identical facts. The basis for his contention is that both the petitioner in Kennedy and

Taxpayer entered a written ICA with the broker to affiliate as an independent contractor acting as a salesperson paid on a commission basis. That description omits the difference between petitioner's position as a salesperson at Weichert and the outsized role Taxpayer assumed at Monihan Realty as owner, corporate officer, broker of record and broker-salesperson, a significant distinction in the facts as material to this court's analysis.

Second, this court finds the legal reasoning in Kennedy to not be instructive since it interprets the Brokers Act. As determined by this court, the Legislature did not intend for the Brokers Act and its subsequent amendments to legislate taxation of the licensed real estate professionals regulated by the Act. Likewise, because of the circumstances which invoked interpreting the Brokers Act the legal reasoning is inapplicable to these facts.

In Kennedy, the Court determined that the ABC test, the predominant test for employee classifications for WPL claims, would preclude real estate brokers and real estate salespersons from establishing an "independent contractor" relationship. This is because the ABC test's classification is greatly dependent upon the degree of control exerted by the benefited party over the individual rendering services.[6] Under

---

[6] Traditionally, New Jersey courts relied upon the three-pronged ABC test, pursuant to N.J.S.A. 43:21-19(i)(6)(A)-(C) of the Unemployment Compensation Law, for independent contractor and employee status determinations for various purposes, including under the WPL statute. Hargrove, 220 N.J. at 305. The test was used as well for determinations under the Wage and Hour Law, N.J.S.A. 34:11-56a to -

the Brokers Act, fully commissioned real estate salespeople are subject to vast supervisory control by their real estate broker. The Brokers Act requires salespersons to be licensed and operate under the supervision of only one broker at a given time. Kennedy, 250 N.J. at 303; N.J.S.A 45:15-14.

After the Court determined that the ABC test did not apply to the petitioner in Kennedy, the Court's analysis then centered on whether the 2018 and 2022 Amendments to the Brokers Act, both of which require the election of a business affiliation by real estate brokers and salespersons, served as an appropriate proxy for the ABC test under the circumstances. Kennedy, 257 N.J. at 303-311. From there, the Court relied upon the "notwithstanding" clause of the 2018 Amendment, holding that petitioner Kennedy was an independent contractor under the WPL statute. Id. at 312. This court finds, rather than the Kennedy analysis which the Court applied under circumstances that arose in the context of the WPL and the Brokers Act, it is N.J.A.C. 18:35-7.1 which provides the appropriate standard for use by this court in resolving a tax issue arising under the GIT Act.

---

56a38. Hargrove, 220 N.J. at 305. The test presumes an individual is an employee, unless the employer can make certain showings related to their control of performance, scope of the relationship, and independence between the parties. Ibid. (citing N.J.S.A. 43:21-19(i)(6)). All three prongs must be met, otherwise, it results in the "relationship being one of 'employment.'" Schomp v. Fuller Brush Co., 124 N.J.L. 487, 489 (Sup. Ct. 1940).

*ii. Taxpayer was correctly determined to be an employee under N.J.A.C. 18:35-7.1(e).*

In its final determination, Taxation cites N.J.A.C. 18:35-7.1(e)(1) as its basis for reclassification of Taxpayer's commissions. It is undisputed that Taxpayer was a corporate officer of the company who received a paid salary for this role during the years at issue. As an employee, all of Taxpayer's earnings for the company would belong in the same category for purposes of tax reporting. N.J.S.A. 54A:5-1a. Any descriptions made by either party to the contrary are immaterial, under N.J.A.C. 18:35-7.1(d). Thus, "independent contractor" descriptions or designations within his ICA are immaterial to determining Taxpayer's status for tax reporting purposes.

While not a basis for its final determination, in its argument before the court, Taxation contends that essentially the same result would be attained by application of N.J.A.C. 18:35-7.1(b), under the fourteen-factor test the regulation incorporates.[7]

---

[7] The regulation's fourteen factors include the following:
> (1) The relationship which the parties believe they have created; (2) The extent of control exercisable by the person receiving the benefit of the services over the manner and method of performance. It is not necessary that the employer actually direct or control the manner of performance, but it is sufficient if he or she has the right to do so; (3) Whether the person rendering the service undertook substantial costs to perform the service; (4) Whether the service required special training or skill, and whether the person receiving the benefit of the services

For example, the company provided Taxpayer with an office furnished with office equipment, reference materials, supplies, tools, and availability of support staff to fulfill administrative duties, filing, and outward-facing receptionist services. The company also provided or offered to provide various forms of insurance coverage to Taxpayer, which included workers compensation coverage. The

provided such special training; (5) The duration of the relationship between the parties; (6) Whether the person rendering the service had a risk of loss; (7) Whether the person who received the benefit of the services could discharge without cause the person who performed the services; (8) The method of payment, such as by time or by job; (9) Whether the person rendering services regularly performs the same services for other persons and is not protected to any degree from competition; (10) Whether the person for whom services are performed furnishes tools, equipment, support staff and a place to work to the individual rendering the services; (11) Whether the individual rendering the services is eligible for employer provided benefits such as pension, bonuses, paid vacation days and sick pay; (12) Whether the person receiving the benefits of the services rendered carries workmen's compensation insurance on the individual performing the services; (13) Whether the Internal Revenue Service determines that an individual performing services is an employee; and (14) Any other information deemed to be relevant by the Division.

[N.J.A.C. 18:35-7.1(b).]

Notably, the regulation incorporates factors examined by the court in Boudrot v. Dir., Div. of Taxation, 4 N.J. Tax 268 (Tax 1982). The circumstances in Boudrot arose from the taxpayer's challenge of Taxation's treatment of certain income as "income incurred in connection with employment." Id. at 270.

company paid his licensing and industry association dues, at a minimum, for the years at issue in this case. Taxpayer could not show that he reimbursed the company for the benefits, dues, or support services nor provided any cost-sharing agreements he had with the company.

Aside from those facts specific to Taxpayer's work arrangement, he was a fifty-percent owner of the company, accepted the role of corporate officer which included paid salary, and sold real estate exclusively for the company for over thirty-five years. Taxpayer also reported that he is an employee of the S corporation as an officer on his GITRs. Apart from the language of the 1989 ICA, an overall view of the facts that define Taxpayer's relationship with the company lacked the requisite independence to be classified as an independent contractor.

In conclusion, this court finds that Taxpayer's attempt to portray that he was not an employee in his broker-salesperson work for his own company, and in turn, to essentially treat the company as if it were two separate businesses, is disingenuous as it relates to the issue before the court. This artificial assertion enabled Taxpayer to take additional deductions on Schedule C of the GITRs, as business deductions from the sales work in reliance on Taxpayer's ICA executed in 1989.

Taxpayer entered the ICA with the company to treat himself as an independent contractor. Because the Brokers Act mandated comprehensive supervision of real estate salespersons by brokers and precluded an independent contractor relationship

33

between real estate brokers and salespersons, the Brokers Act was eventually amended to require that parties elect a business affiliation for the salesperson, as either an independent contractor or employee.[8]

Taxpayer's arguments appear compelling at first blush in his reliance on the amended Brokers Act, coupled with our Supreme Court's enforcement of an ICA in Kennedy, to challenge Taxation's reclassification of the 1099-MISC commission income. However, this court does not find that the circumstances involving the Brokers Act and Kennedy, fortuitous to Taxpayer, should apply to circumvent the regulatory tax scheme which addresses the very issue this case presents, the reporting of wages by an employee. Moreover, in the absence of a challenge to the validity of N.J.A.C. 18:35-7.1, and the presumption of correctness accorded to the regulation, Taxation's determination is not arbitrary, capricious, or unreasonable. Therefore, this court finds that Taxation's reclassification of Taxpayer's commission income was correct under the GIT Act and N.J.A.C. 18:35-7.

Orders will be entered granting Taxation's cross-motion and denying Taxpayer's motion for summary judgment.

---

[8] This court does not opine on the validity of Taxpayer's ICA, nor on the application of an ICA entered within the context of the Brokers Act, outside the facts of this case.